A97A0987. BUMGARNER et al. v. GREEN et al.
(489 SE2d 43)

Judge Harold R. Banke.

Norman B. Green, a special limited partner of Wauka Mountain, Limited ("Wauka"), sued Wauka, the other two limited partners, W. S. Bumgarner III and Douglas Bruce, and the sole general partner,

Senson, Inc., a Georgia corporation. Following a jury verdict in Green's favor, Bumgarner, Bruce, and Senson, Inc. appeal.

In the summer of 1987, Green approached Douglas Bruce regarding possible residential development of about 104 acres of Green family property in Hall County. Green and his two brothers each owned an undivided one-third interest in the property, and Green proposed that he, Bruce, and W. S. Bumgarner form a partnership to subdivide and sell the property minus the family farmhouse and a few acres to be retained by Green. On January 13, 1988, using funds primarily borrowed from personal lines of credit, Bumgarner and Bruce purchased the interests of Cam and Sherman Green, paying each $100,000. Bumgarner and Bruce then conveyed the family farmhouse and two acres to Green in fee simple.

On that same day, Bumgarner, Green, and Bruce created Wauka as a Georgia limited partnership. Bumgarner and Bruce executed deeds conveying the balance of the property into the limited partnership for development and sale. Under the Wauka partnership agreement, Bumgarner and Bruce were denoted as limited partners and the sole general partner was Senson, Inc.[1] Green, as "special limited partner," was not required to fund any of the development costs of the property and was relieved of any obligation to contribute funds to the partnership. Green conveyed his undivided one-third interest to Wauka, and Bumgarner and Bruce contributed $100,000 each as their initial investment. According to the partnership agreement, Green, Bumgarner, and Bruce had an approximate 33⅓ percent interest in the real property.

Paul Kesmodel, the closing attorney who drafted the agreement, testified that everyone had an opportunity to read the document before signing it. Kesmodel, who represented Bumgarner and Bruce, explained that he specifically inserted language in the document to enable Bumgarner and Bruce to recoup their cash investment and all other expenses. Kesmodel testified that during the closing he went through the agreement, explaining and summarizing the salient provisions. Green admitted that he signed the Wauka partnership agreement without bothering to obtain counsel and without reading most of the document.

About two months after Wauka's formation, Senson, Inc., through its president, Bumgarner, borrowed $342,000 from Brand Banking Company ("Brand"). Wauka, through its general partner, Senson, Inc., executed two deeds to secure debt and a promissory note in favor of Brand, encumbering the property. In addition to

---

[1] The corporate minutes of Senson, Inc. list Bumgarner as president and treasurer, and Bruce as vice president and secretary.

requiring a security deed, Brand had Bumgarner individually and personally guarantee the debt. After receipt of the $342,000, Bumgarner reimbursed himself, individually, and Bruce, individually, for their $200,000 initial investment plus interest.[2]

Lot sales progressed exceedingly slowly. From 1988 through 1995, Wauka's total net profits from land sales were $119,668. For the same period, Wauka's interest payments to Brand totaled in excess of $192,000. In the spring of 1993, Brand's president began making demands for payment. Shortly thereafter, Green became disillusioned with the partnership, especially when he discovered that the partnership had mortgaged the property in order to obtain the substantial loan with Brand. In July 1993, Wauka sold 37 acres to Green's son, Dean Green, and used the funds to partially reduce Wauka's indebtedness to Brand.

In January 1995, Green sued Bumgarner, Bruce, and Senson, Inc., alleging inter alia, breach of duty of good faith, fraud, mental distress, and conversion. Green alleged that Bumgarner and Bruce breached their fiduciary duties to him by borrowing money against the property and recouping their acquisition costs for the property. Green also brought a statutory claim for the return of his contribution to the partnership. Prior to trial, Green dismissed Wauka as a defendant.

The trial court determined that because the Wauka partnership agreement was ambiguous as to whether the agreement authorized Bumgarner and Bruce to be reimbursed for their $200,000 initial investment, a jury needed to resolve the matter. Similarly, the issues of Green's claim for return of his contribution, breach of the duty of good faith, conversion, and attorney fees were also submitted to the jury. The court, however, directed a verdict on Green's fraud claim, finding that Green failed to offer any evidence of concealment, active or passive misrepresentation, or misimpression.

The jury awarded Green $100,000 plus attorney fees of $15,000. On appeal, Bumgarner, Bruce, and Senson, Inc. (collectively "Bumgarner") assert seven errors, including the judgment dismissing Bumgarner's claims against Dean Green, Green's son, whom they sued as a third-party defendant. *Held*:

1. In three enumerations of error, Bumgarner asserts that the trial court erred in construing the partnership agreement and in finding that actions specifically permitted by the agreement could constitute a breach of fiduciary duty. Bumgarner contends a directed

---

[2] The total amount of reimbursement was $222,035.01 which included the $200,000 initial investment, interest, closing costs, and survey fees.

verdict was required because the acts that Green complained of were authorized under the terms of the Wauka partnership agreement.[3] We agree and reverse.

Under the rules of contract construction, where the language in an agreement is clear and unambiguous, no construction is required or permitted by the trial court. *Lothridge v. First Nat. Bank &c.*, 217 Ga. App. 711, 714 (3) (a) (458 SE2d 887) (1995). Here, Paragraph VI of the Wauka agreement provides, "[t]he Special Original Limited Partner [Green] shall be entitled to receive or be allocated profit and loss in accordance with his respective percentage interest only after the Original Limited Partners [Bumgarner and Bruce] and the General Partner [Senson, Inc.] have been reimbursed all additional funds which the General Partner and the Original Limited Partners shall advance from time to time to the Limited Partnership for the purposes of paying the acquisition costs of the real property, title insurance premiums, recording charges, and any and all other acquisition cost expenses incurred in connection with the acquisition of the real property described on Exhibit 'A' [the entire 106-acre parcel]." The partnership agreement expressly authorized the General Partner to mortgage and encumber the underlying property (Section 11.01 (b)). According to Section 14.02: "The Property may be encumbered, sold, or otherwise transferred by the General Partner. . . ."

As a general rule, "[t]he construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part." OCGA § 13-2-2 (4). Considering the agreement as a whole, it plainly authorized Senson, Inc. to encumber the real property and the limited partners, Bumgarner and Bruce, to recover acquisition costs. See *U. S. Fire Ins. Co. v. Capital Ford &c.*, 257 Ga. 77, 79 (1) (355 SE2d 428) (1987) (when words in a contract are plain and obvious, they must be given their literal meaning).

Nor do we find the language of the partnership agreement ambiguous. Ambiguity is " 'duplicity, indistinctness, an uncertainty of meaning or expression.' " *Tarbutton v. Duggan*, 45 Ga. App. 31 (5) (163 SE 298) (1932). A word or phrase is ambiguous when " ' "it is of uncertain meaning and may be fairly understood in more ways than one." ' " (Citations omitted.) *Kusuma v. Metametrix, Inc.*, 191 Ga. App. 255, 256 (2) (381 SE2d 322) (1989). In this case, the partnership agreement is not ambiguous with respect to the issue of reimbursement for acquisition costs. By its express terms, the agreement bars the distribution of Wauka's profits and losses until after the limited

---

[3] Although Green did not allege in his complaint that Bumgarner breached the partnership agreement, the trial court instructed the jury on that theory.

partners had been reimbursed for future advances and for "any and all other acquisition cost expenses incurred in connection with the acquisition of the real property. . . ." See *Lyle v. Southern Fed. Sav. &c.*, 160 Ga. App. 196, 197 (2) (286 SE2d 438) (1981) (judicial construction inappropriate where contract terms are plain and unambiguous).

Nor was Green excused from reading the agreement to which he assented. Although Green in hindsight expressed regret that he had not retained a lawyer, he admitted that he had been afforded an opportunity to read the agreement and to ask the closing attorney questions about it. Green conceded that although he took a copy home he did not read the agreement until several years later in mid-1993. Where one who can read signs a contract without reading it, he is bound by its terms, unless he can show that an emergency existed at the time of signing that would excuse his failure to read it, or that the opposite party misled him by an artifice or device which prevented him from reading it, or that a fiduciary or confidential relationship existed between the parties upon which he relied in not reading the contract. *Cochran v. Murrah*, 235 Ga. 304, 305 (219 SE2d 421) (1975). Inasmuch as Green failed to show a valid excuse for not reading the contract, he is bound by its terms despite that fact that they did not operate to his benefit. See id.; *Kochis v. Mills*, 233 Ga. 652, 653 (212 SE2d 823) (1975) (limited and general partners may make any agreement among themselves that they deem desirable provided their agreement does not violate a statute, the common law, or applicable public policy considerations). For the above reasons, we reverse the judgment rendered in Green's favor and find that Bumgarner was entitled to a directed verdict as a matter of law. OCGA § 9-11-50 (e); compare *Mattox v. MARTA*, 200 Ga. App. 697, 698 (1) (409 SE2d 267) (1991).

2. Notwithstanding his claim to the contrary, Green was not entitled to recover his contribution from the limited partners. Green filed a statutory claim under OCGA § 14-9A-47 seeking a return of the value of his contribution. Neither the partnership agreement nor OCGA § 14-9A-47 permitted Green to recover his contribution from the limited partners.

We next address Green's recovery for his contribution from the general partner, Senson, Inc. It is undisputed that Wauka had sold all the land, the partnership was at an end, and Green had voluntarily dismissed Wauka as a party. However, even after Green voluntarily dismissed Wauka as a defendant, Green could recover against Senson, Inc., but only if "there remains property of the partnership

sufficient to pay [him, as a limited partner]."[4] OCGA § 14-9A-47 (a) (1). See *Kochis*, 233 Ga. at 653. Inasmuch as the record is unclear as to what, if any, assets remained after the dissolution of the partnership, we remand for a determination by the trial court as to whether any partnership assets remain from which Green could recover his contribution from Senson, Inc. or from partnership assets. OCGA § 14-9A-47 (b) (1).

3. The award of attorney fees must be reversed. Green sought attorney fees based on bad faith and stubborn litigiousness. Because the actions taken were authorized by the partnership agreement, the record does not sustain a bad faith predicate upon which to base attorney fees. *Holmes v. Drucker*, 201 Ga. App. 687, 689 (4) (411 SE2d 728) (1991).

4. The trial court did not err in directing a verdict in favor of third-party defendant, Dean Green, on his alleged derivative liability. Only one who is secondarily liable to the original defendant may be brought in as a third-party defendant. *Quality Ford Sales v. Greene*, 201 Ga. App. 206, 207 (410 SE2d 389) (1991). For this reason, Bumgarner's third-party action was not proper. See *Owens v. Citizens Trust Bank*, 190 Ga. App. 501 (2), 502 (379 SE2d 594) (1989).

5. Based on the foregoing divisions, we need not reach the remaining enumerations.

*Judgment affirmed in part and reversed in part. Pope, P. J., and Johnson, J., concur.*

DECIDED JUNE 20, 1997 —
RECONSIDERATION DENIED JULY 9, 1997 —

*Webb, Tanner & Powell, Anthony O. L. Powell, Robert J. Wilson*, for appellants.

*Banks, Stubbs & Neville, John R. Neville, Eric D. Miller, Davis, Gregory, Christy & Forehand, Hardy Gregory, Jr.*, for appellees.

---

[4] Section 11.06 precludes personal liability for the General Partner, absent fraud, gross negligence, or gross misconduct.