A99A0889. WILLIAM J. COONEY, P.C. v. ROWLAND.
(524 SE2d 730)

JOHNSON, Chief Judge.

The law firm of William J. Cooney, P.C. filed an action to foreclose an attorney's lien on settlement checks issued to Cooney's client, Willis Rowland. The trial court entered judgment in favor of Cooney for only about one-third of the amount requested, based on its finding that the attorney-client fee agreement sought to be enforced by Cooney was unconscionable. Cooney appeals, arguing that the agreement was not unconscionable and should have been enforced according to its terms. We agree.

Rowland served as vice-president of a building products company. In 1987, the Internal Revenue Service made a tax assessment against the company for $162,289.71 based on the company's alleged failure to pay employment taxes in 1984 through 1986. The IRS sought to collect the taxes from Rowland. Rowland paid some of the taxes but, believing the assessment was improper, sought legal assistance to challenge it.

Rowland employed Cooney to represent him and, in so doing, executed a fee agreement which provided the following: Cooney would bill Rowland monthly on a time-expended basis; if Rowland disputed the calculation or amount of the fee, the matter would be submitted to the State Bar of Georgia for resolution; the hourly rates for the attorneys' services ranged from $75 to $165; the bills would be due and payable upon presentation; interest would accrue on any outstanding balances at the rate of one and one-half percent per month beginning thirty days after the date the bill was presented and continuing until paid; Rowland would be responsible for collection costs and prejudgment interest if Cooney had to sue to collect its fee; and any money Cooney received for Rowland's benefit would be reduced by any fees and costs he owed to Cooney.

As provided in the agreement, Cooney sent monthly bills to Rowland totaling $63,268.49 over the ten-year period in which the case continued. Of that amount, $39,398.49 was attorney fees, $23,580 was interest, and $290 was advanced costs. Rowland's payments on the account totaled $23,235. Cooney applied the payments first to the interest due, then to the principal.

The tax case was settled in 1998. The IRS issued to Rowland two refund checks totaling $61,646.81. Cooney filed the underlying lien foreclosure action against the refund checks, claiming Rowland still

owed him $43,496.44 in fees ($37,394.83 principal, $2,488.32 pre-judgment interest, future prejudgment interest, attorney fees of $4,013.29, and court costs). The trial court disallowed the interest charges which had accrued over the years and awarded Cooney only $13,045.15 in attorney fees and $85 in advanced costs. This was plain error.

In addition to being authorized by the fee agreement to charge interest at the rate charged, Cooney was authorized by statute to charge interest in the manner in which it was charged. The owner of a commercial account may charge interest on the balance due on the account when the account has been due and payable thirty days or more and may charge as much as one and one-half percent interest per month on the balance until the account is paid; an account is "commercial" if it involves an obligation to pay money arising out of a transaction to furnish services. OCGA § 7-4-16. Furthermore, when a payment is made upon any debt, the creditor shall apply the payment first to discharge the interest due, then to reduce the principal. OCGA § 7-4-17. Cooney was therefore authorized by statute to charge interest at the rate charged and to apply Rowland's payments first to the interest due and then to the principal. At all times, Rowland could have avoided any obligation to pay interest by paying the principal in full each month *as he agreed to do.*

Contrary to the trial court's finding, the contract was not unconscionable. "An unconscionable contract is one abhorrent to good morals and conscience. It is one where one of the parties takes a fraudulent advantage of another." (Citation, punctuation and emphasis omitted.) *F. N. Roberts Pest Control Co. v. McDonald*, 132 Ga. App. 257, 260 (3) (208 SE2d 13) (1974). It is an agreement that no sane person not acting under a delusion would make and that no honest person would take advantage of. See id.; *Hall v. Fruehauf Corp.*, 179 Ga. App. 362 (346 SE2d 582) (1986) (physical precedent only).

The fee agreement here simply does not fall within these definitions. The agreement is neither abhorrent nor one that a sane person would not enter into. There is no evidence or claim that Cooney took advantage of Rowland, fraudulent or otherwise. The agreement does not violate public policy or any statute. See *Hall*, supra. Indeed, the law specifically allows the owner of a commercial account to charge one and one-half percent interest per month on the balance and to apply payments to interest first. That which the law itself specifically permits cannot be unconscionable. *Zepp v. Mayor &c. of Athens*, 180 Ga. App. 72, 78 (2) (348 SE2d 673) (1986).

Moreover, unconscionability is determined based on the circumstances existing at the time the contract was made, rather than those existing years later, when one party seeks to enforce the terms of the agreement. See *BMW Financial Svcs. v. Smoke Rise Corp.*, 226 Ga.

App. 469 (486 SE2d 629) (1997). Thus, the fact that a large amount of interest accrued over the ten-year period does not make the contract unconscionable.

Georgia law recognizes and protects the freedom of parties to contract. *NEC Technologies v. Nelson*, 267 Ga. 390, 396 (4) (478 SE2d 769) (1996). In general, parties should be entitled to contract on their own terms without the courts saving one side or another from the effects of a bad bargain; they should be permitted to enter into contracts that may actually be unreasonable or which may lead to hardship. Id. In this case, the trial court should have enforced the agreement as written and as permitted by statute. See *BMW Financial Svcs.*, supra at 470.

Rowland asserts that he does not dispute Cooney's interpretation of the law concerning unconscionability and freedom to contract, which interpretation is similar to ours as expressed in this opinion. Instead, Rowland argues that the attorney-client relationship is governed not by the written fee agreement or by the law as set forth in Georgia's statutes and appellate court decisions, but primarily by the rules of professional conduct promulgated by the State Bar of Georgia. Specifically, Rowland points to the Rules & Regulations of the State Bar of Georgia, Standard 31 (a), which provides that a lawyer shall not enter into an agreement for, charge or collect an illegal or clearly excessive fee. He complains that the fee is excessive because the firm's recovery would be larger than his, which, he says, would be an outrageous result. His argument is completely without merit.

The fact that this case involves an attorney-client relationship does not mean that the rules of professional conduct preempt statutory law and case law regarding contracts. It is true that Cooney was bound to abide by standards of professional conduct. See *McMann v. Mockler*, 233 Ga. App. 279, 282 (3) (503 SE2d 894) (1998). However, it is also true that cases involving attorney-client relationships are very often decided based solely upon the terms of the contract, applicable statutes and appellate court decisions, without reference to the rules or standards of the State Bar of Georgia. See, e.g., *Greer, Klosik & Daugherty v. Yetman*, 269 Ga. 271, 274 (1), (2) (496 SE2d 693) (1998); *Lipton v. Warner, Mayoue & Bates*, 228 Ga. App. 516, 518 (2) (492 SE2d 281) (1997); *Plumlee v. Davis*, 221 Ga. App. 848, 851-853 (2), (3) (473 SE2d 510) (1996). In fact, statutory and case law have significance even in attorney-client relationships.

Furthermore, there has been no showing that Cooney violated Standard 31 (a) by charging an excessive fee. The hourly fees charged by Cooney are reasonable on their face. Rowland's argument that Cooney's fee would be disproportionately large considering the settlement amount takes into account only the results obtained. It ignores other relevant factors, such as the fact that this was not a contingent

fee agreement, that the subject matter and procedures involved were complicated, and that the case lasted ten years.*

We note that Rowland's claim that the fee was clearly excessive is belied by the fact that the written agreement specifically gave him the right to dispute the calculation or amount of attorney fees and have the fee dispute submitted to arbitration; he apparently never disputed the bills, despite having received them every month for ten years.

The fee agreement in this case was not unconscionable when entered into, and it is not unenforceable today. The trial court erred in not permitting the charging of interest as provided in the contract and in not permitting Cooney to apply the payments as directed by statute. The case must therefore be reversed. The trial court is directed to vacate the judgment and recalculate the amount of the judgment consistently with this opinion.

*Judgment reversed and case remanded with direction. Pope, P. J., and Smith, J., concur.*

DECIDED OCTOBER 19, 1999 —
RECONSIDERATION DENIED NOVEMBER 5, 1999 — 

*William J. Cooney*, for appellant.
*Spivey, Carlton & Edenfield, J. Franklin Edenfield*, for appellee.

---

* Standard 31 (a) lists factors to be considered as guides in determining the reasonableness of an attorney fee. Factors include: the time and labor required, the difficulty of the questions involved, the fee customarily charged in the locality for similar services, the amount of money involved and results obtained, the length of relationship with the client, the lawyer's experience, and whether the fee is fixed or contingent.