## A00A0540. RESULTS ORIENTED, INC. v. CRAWFORD.
## A00A0541. CAVALIER HOMES OF ALABAMA, INC. v. CRAWFORD.
## A00A0542. GREEN TREE FINANCIAL SERVICING CORPORATION v. CRAWFORD.
### (538 SE2d 73)

ANDREWS, Presiding Judge.

The interlocutory appeals[1] of Results Oriented, Inc. d/b/a Assured Housing (Assured) (mobile home retailer), Cavalier Homes of Alabama, Inc. (Cavalier) (mobile home manufacturer), and Green Tree Financial Servicing Corporation (Green Tree) (lender) were granted to consider whether, as held by the trial court in denying appellants' motions to compel arbitration, agreements to arbitrate contained in documents effecting the sale and financing of a mobile home were unconscionable and whether the Magnuson-Moss Warranty Act, 15 USC § 2301 et seq., precludes arbitration of warranty claims.

In opposition to the motions to compel arbitration, Ray Marlin Crawford submitted his affidavit which stated that he and his wife began looking at new mobile homes in the summer of 1997. They visited Assured's lot in Villa Rica and looked at different mobile homes, some fully set up and some not. On their second visit to the lot, Mr. Crawford advised one of the Assured representatives that he could not pay more than $500 per month. It was agreed that Assured would give Crawford $11,750 on trade-in of his old mobile home (fairly valued at $2,000) and charge more for the home so that Crawford could get more favorable financing terms and payments of $500. In response, Crawford "took some more time to think about this." The Crawfords returned to the lot again and told Don Gilbert, another Assured representative, they were ready to buy the Cavalier mobile home which they had toured on the lot. That home had been manufactured in Alabama.

---

[1] Regarding this Court's jurisdiction to consider these appeals, which are consolidated for review, see generally *Simmons Co. v. Deutsche Financial &c. Corp.*, 243 Ga. App. 85 (532 SE2d 436) (2000) (the Federal Arbitration Act (9 USC §§ 1-16) does not preempt Georgia procedural law allowing appeal of orders regarding arbitration).

Crawford described the signing of documents as follows:

[Gilbert] called us into an office to sign paperwork and had a stack of documents approximately 1 inch thick. I kind of joked "Do I have to sign all that?" Mr. Gilbert said, "Oh, its [sic] just standard documents we have in the sale of all mobile homes." Mr. Gilbert never mentioned to me any limitations or exclusions of warranties. He did not tell me the documents required that I waive a jury trial or submit any dispute with any party to mandatory binding arbitration at my expense before a retired judge or practicing attorney in the State of Alabama. I certainly would not have agreed to waiving my legal rights had I known that such was in the documents. Mr. Gilbert placed the documents on a desk and flipped through them indicating by pointing where I was to sign or initial. I have nor [sic] recollection of the number of documents that I signed. I signed or initialed where I was told by Mr. Gilbert. While I can read, I am not a sophisticated business man and even today, after having many hours to pore over the documents, I do not understand all the language in them. I do not know that I ever received copies of the documents I signed because I did not have a copy of the "acknowledgment and agreement" form that was sent to my attorney by Mr. Lowe from Cavalier in my paperwork in my possession where we kept all the documents given to us.

Among the documents signed by Crawford were the contract of sale between Assured and Crawford, a Manufactured Home Retail Installment Contract and Security Agreement (Installment Contract) signed by Crawford and assigned by Assured to Green Tree, and an Acknowledgment and Agreement signed by Crawford as well as representatives of Assured and Green Tree. Paragraph 14 of the Installment Contract, pursuant to which Green Tree seeks to compel arbitration, states:

14. ARBITRATION: All disputes, claims or controversies arising from or relating to this Contract or the parties thereto shall be resolved by binding arbitration by one arbitrator selected by you [seller or assignee after assignment] with my [buyer] consent. This agreement is made pursuant to a transaction in interstate commerce and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve

disputes. The parties understand that they have a right to litigate disputes in court, but that they prefer to resolve their disputes through arbitration, except as provided herein. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY YOU (AS PROVIDED HEREIN). The parties agree and understand that all disputes arising under case law, statutory law and all other laws including, but not limited to, all contract, tort and property disputes will be subject to binding arbitration in accord with this Contract. The parties agree that the arbitrator shall have all powers provided by law, the Contract and the agreement of the parties. These powers shall include all legal and equitable remedies including, but not limited to, money damages, declaratory relief and injunctive relief. Notwithstanding anything hereunto the contrary, you [Green Tree] retain an option to use judicial (filing a lawsuit) or non-judicial relief to enforce a security agreement relating to the Manufactured Home secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation secured by the Manufactured Home or to foreclose on the Manufactured Home. The institution and maintenance of a lawsuit to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this Contract, including the filing of a counterclaim in a suit brought by you pursuant to this provision.

The portions of the clause which are capitalized are also in bold print in the Contract. Paragraph 14 is the last numbered paragraph in the Installment Contract, and a portion of it is printed on the same page as Crawford's signature. Immediately above his signature, in large bold type, is "NOTICE TO BUYER: 1. DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. 2. YOU ARE ENTITLED TO A COPY OF THIS CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS."

Sections (d), (e), and (f) of Paragraph 1 of the Acknowledgment and Agreement, signed by Crawford, Assured, and Cavalier, state that Assured is not an agent of Cavalier but dealt with Crawford as an independent party; that Crawford has received a packet of materials, including the Manufacturer's Warranty; and that "[a]ll warranty claims against MANUFACTURER . . . are to be handled as provided

in the MANUFACTURER'S Warranty which PURCHASER has read and understands or will read and be familiar with." Paragraph 10,[2] titled "ARBITRATION," provides that:

> All parties acknowledge and agree that this Agreement and the performance of the transactions contemplated hereby evidence transactions which involve a substantial nexus with interstate commerce. Accordingly, any dispute, controversy or claim of any kind or nature which has arisen or may arise between the parties, their successors, assigns, heirs, representatives, parent companies, divisions, subsidiaries, affiliates, officers, directors, employees, agents, and contractors (including any dispute, controversy or claim relating to the validity of this arbitration clause), whether arising out of past, present or future dealings between the parties, their successors, assigns, heirs, representatives, parent companies, divisions, subsidiaries, affiliates, officers, directors, employees, agents and contractors shall be governed by the Federal Arbitration Act and shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Such arbitration proceedings shall be held at the principal place of business of the Manufacturer or at such location as shall be designated by Manufacturer, and shall be heard by an arbitrator who is either a (i) retired judge or (ii) practicing attorney who has conducted more than three (3) arbitrations during the preceding five (5) years. Without limiting the generality of the foregoing, it is the intention of the parties to resolve by binding arbitration, as provided herein, all past, present, and future disputes, whether in tort, contract or otherwise, concerning or related to (i) the manufactured home, its sale, warranty, set up, repair, installation, manufacture, financing, insurance, [and] its condition, (ii) the validity of this Agreement, and (iii) any other dealings, business or otherwise, between the parties, their successors, assigns, [and] heirs. . . . The parties understand and agree that the arbitrator shall have all powers provided by law, and may award any legal or equitable relief, including, without limitation, money damages, declaratory relief and injunctive relief; provided, however, that the arbitrator will have no power to

---

[2] It is this paragraph pursuant to which Cavalier and Assured seek to compel arbitration.

award punitive damages or other damages not measured by the prevailing party's actual damages. EACH OF THE PARTIES HERETO WAIVES ANY RIGHT TO A JURY TRIAL WITH RESPECT TO ANY CONTROVERSY BETWEEN THE PARTIES, THEIR SUCCESSORS, ASSIGNS, HEIRS, REPRESENTATIVES, PARENT COMPANIES, DIVISIONS, SUBSIDIARIES, AFFILIATES, OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, AND CONTRACTORS.

Immediately below this paragraph appeared "I HAVE READ AND UNDERSTAND SECTION 10 WHICH RELATES TO ARBITRATION AND WAIVER OF JURY TRIAL." In the space provided for "PURCHASER's INITIALS," Crawford initialed.

The Acknowledgment and Agreement, in addition to invoking the Federal Arbitration Act (FAA), 9 USC §§ 1-16, provides that "[t]his Agreement shall be governed by the laws of the State of Alabama."

The trial court determined that the two arbitration clauses were unconscionable, using the standards set out in *NEC Technologies v. Nelson*, 267 Ga. 390 (478 SE2d 769) (1996), and that arbitration was precluded by the Magnuson-Moss Warranty Act as to all three defendants.

## Case No. A00A0542

1. We consider first the appeal of Green Tree. Green Tree urges in its first enumeration, and we agree, that the trial court committed legal error by not following substantial precedent holding that arbitration clauses in consumer contracts are enforceable under the FAA and further in refusing to determine whether the validity of the arbitration clause itself was required to be arbitrated.

(a) The FAA, according to the United States Supreme Court, creates a body of federal substantive law and preempts state laws that undermine enforcement of private arbitration agreements. *Southland Corp. v. Keating*, 465 U. S. 1, 16 (104 SC 852, 79 LE2d 1) (1984).

> "[T]o the extent that (a state law) stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," it will be preempted by the FAA. (Citation and punctuation omitted.) *Volt Information Sciences v. Bd. of Trustees &c.*, 489 U. S. 468, 477 (109 SC 1248, 103 LE2d 488) (1989).

*Simmons Co. v. Deutsche Financial &c. Corp.*, 243 Ga. App. 85, 88 (1) (532 SE2d 436) (2000).

In the Installment Contract, the FAA is specifically relied upon, and there is no choice of law provision calling into question any conflict with state law, such as those contained in *Volt*, supra, and *North Augusta Assoc. v. 1815 Exchange*, 220 Ga. App. 790, 791 (1) (469 SE2d 759) (1996). Also, even when there is a choice of law provision, if the intent of the parties indicates that arbitration would be governed by the FAA, this Court will enforce the intentions of the parties. *Primerica Financial Svcs. v. Wise*, 217 Ga. App. 36, 37 (1) (456 SE2d 631) (1995).

Georgia has also enacted an Arbitration Act, OCGA § 9-9-1 et seq., evidencing the legislature's conclusion that arbitration is not in violation of the public policy of this State and, therefore, cannot be said, per se, to be unconscionable. "What the Legislature allows cannot be contrary to public policy. [Cit.]" *NEC Technologies*, supra at 394 (3). See also *W. J. Cooney, P.C. v. Rowland*, 240 Ga. App. 703, 704 (524 SE2d 730) (1999).

In the case of Green Tree and Crawford, the Installment Contract without question invokes both the substantive law and procedure of the FAA. There was no argument below that the transaction did not involve interstate commerce nor that the FAA would not apply pursuant to the Installment Contract, only that there was unconscionability, which is considered further, infra.

(b) The trial court's sole allusion to the issue of which forum, court or arbitrator, should decide if the Installment Contract and the Acknowledgment and Agreement provided that the threshold issue of arbitrability be arbitrated was the following footnote:

> The Court is unpersuaded by the notion that the arbitration provision itself, allegedly requiring that its very validity, when challenged, must be arbitrated as if it were somehow self-validating, can control this issue. *See, Allstar Homes, Inc. v. Waters*, [711 S2d 924] (1997).

First, pursuant to the FAA and in the absence of conflicting Georgia or Alabama law,[3] we apply the federal law of arbitrability to the Installment Contract. *Volt*, supra; *Hilton Constr. Co. v. Martin Mechanical Contractors*, 251 Ga. 701, 703 (308 SE2d 830) (1983), following *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U. S. 1, 24 (103 SC 927, 74 LE2d 765) (1983).

Sections 2 and 3 of the FAA provide that:

> [a] written provision in any . . . contract evidencing a trans-

---

[3] As set out supra, Paragraph 5 of the Acknowledgment and Agreement invokes the laws of Alabama in addition to the FAA.

action involving [interstate] commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . *shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.* If any suit or proceeding be brought . . . upon any issue referable to arbitration under an agreement in writing for such arbitration, the court[,] . . . *upon being satisfied that the issue involved . . . is referable to arbitration[,] . . . shall* on application of one of the parties *stay the trial of the action until such arbitration has been had* in accordance with the terms of the agreement. . . .

(Emphasis supplied.)

The United States Supreme Court, in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U. S. 395, 402 (87 SC 1801, 18 LE2d 1270) (1967), determined that, in a contract with a broad arbitration clause,[4] a claim of fraud in the inducement of the entire contract, as opposed to fraud in the inducement to agree to the arbitration clause, is to be determined by the arbitrator, not the court. See *Green Tree Financial Corp. &c. v. Wampler*, 749 S2d 409, 413 (Ala. 1999) (Identical arbitration clause involved here found "broad enough to include an agreement to arbitrate the issue of the enforceability of the agreement containing the provision for arbitration." Id. at 414.).

In this case, the only evidence presented to the court regarding this issue was Crawford's affidavit, quoted in part above. The only deduction to be made from that affidavit is that Crawford did not read the documents which he signed. As acknowledged by the trial court in its order, however, "[t]here is no evidence that [Crawford] was prevented from reading the documents" by the actions of Assured employees. Assured is the only defendant whose representative was present, in addition to Crawford, at the signing of the documents.

Therefore, absent Crawford's proof of unconscionability under Georgia or Alabama law, the only claim presented to the trial court was that of fraud in the inducement of the entire contract, which must be arbitrated.

This is consistent with the Georgia principle that:

"a party to a contract who can read, must read or show a legal excuse for not doing so, and ordinarily *if fraud is an excuse, it must be such fraud as would prevent the party from*

---

[4] The clause at issue in *Prima Paint* stated that "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration. . . ."

*reading the contract.* One cannot claim to be defrauded about a matter equally open to the observation of all parties where no special relationship or trust or confidence exists. Further, in the absence of special circumstances one must exercise ordinary diligence in making an independent verification of contractual terms and representations, failure to do which will bar an action based on fraud." (Citations and punctuation omitted.) [Cit.] "One not prevented from reading the contract, and having the capacity and opportunity to do so, cannot after signing it claim he was fraudulently induced to sign by promises which contradict the express terms of the contract." [Cit.]

(Emphasis supplied.) *Hovendick v. Presidential Financial Corp.*, 230 Ga. App. 502, 504-505 (2) (497 SE2d 269) (1998). See also *Bumgarner v. Green*, 227 Ga. App. 156, 160 (489 SE2d 43) (1997).[5]

(c) We now look to the issue of unconscionability under *NEC Technologies*, supra. That case, in the context of the Uniform Commercial Code, holds that "the unconscionability of a contract is not to be judged based on subsequently-acquired knowledge." Id. at 595 (3). Further, unconscionability is to be determined "on the *circumstances existing at the time the contract was made, rather than those existing . . . later.*" (Emphasis supplied.) *W. J. Cooney, P.C.*, supra at 704.

The trial court, in concluding the two arbitration clauses here were unconscionable, focused on the fees and costs of arbitration as compared to the filing fee in the State Court of Carroll County and Crawford's lack of sophistication.

Having reviewed the record, however, we find no evidence that, *at the time of signing the documents*, Crawford had any idea of the costs of arbitration. In fact, he denies any knowledge of the requirement to arbitrate at all at that time. Additionally, there was only hearsay evidence of the after acquired knowledge of Crawford regarding costs. Hearsay, even if unobjected to, proves nothing. OCGA § 24-3-1; *Waddington v. Stores Mut. &c. Assn.*, 52 Ga. App. 331 (183 SE 143) (1935).

Georgia has not specifically addressed the issue of unconscionability in the context of the FAA and agreements to arbitrate.

Even before considering unconscionability, however, we again address the issue of arbitrability. For this purpose only, we assume that Crawford's position that he attacked only the arbitration clause as fraudulently induced and unconscionable had been supported by

---

[5] This is also the law of Alabama. See, e.g., *Green Tree Financial Corp. &c. v. Vintson*, 753 S2d 497 (Ala. 1999) (same arbitration clause involved here found binding and not unconscionable).

evidence. In *First Options of Chicago v. Kaplan*, 514 U. S. 938 (115 SC 1920, 131 LE2d 985) (1995), the United States Supreme Court addressed the standards of review under the FAA on two issues: (1) how a trial court should review an arbitrator's decision that the parties agreed to arbitrate a dispute, and (2) how a court of appeals should review a trial court's decision confirming or refusing to vacate an arbitration award. In *Kaplan*, Manuel Kaplan's wholly owned investment company, MKI, had signed a workout document containing an arbitration clause with First Options after the 1987 stock market crash. While Mr. and Mrs. Kaplan had also signed other documents in relation to the workout, none of those signed by them contained an arbitration clause. First Options tried to compel the Kaplans individually to arbitrate, and the Kaplans filed, with the arbitrators, their objections that their dispute with First Options, as opposed to that of MKI, was not arbitrable.

The Court held that courts, in determining whether the parties have agreed to submit the issue of arbitrability itself to arbitration, should not assume that the parties agreed to "arbitrate arbitrability" unless the evidence is clear and unmistakable that they have so agreed. On this question, the presumption on review opposes arbitration.[6]

While the arbitration provision in the Installment Contract is very broad, that contract also contains a severability clause in Paragraph 13, immediately preceding the arbitration provision. We find persuasive and adopt the rationale of the Alabama Supreme Court which held that, in such a situation, the severability clause created an ambiguity as to whether a court or arbitrator would decide the issue of arbitrability and, under *Kaplan*, supra, the trial court properly determined the issue. See *Premiere Chevrolet v. Headrick*, 748 S2d 891, 894-896 (Ala. 1999); *Commercial Credit Corp. &c. Ins. Co. v. Leggett*, 744 S2d 890, 892-894 (Ala. 1999). Compare *Galindo v. Lanier Worldwide*, 241 Ga. App. 78, 82-83 (2) (526 SE2d 141) (1999) (Trial court applied incorrect presumption in favor of arbitration where party denied signing contract containing arbitration clause. Order confirming arbitration award reversed.).

Therefore, it would have been proper for the trial court to determine that Crawford had not agreed to "arbitrate arbitrability" had Crawford presented evidence that he was aware of the arbitration clause and shown that it was unconscionable or induced by fraud.

Contrary to the trial court's finding, the Installment Contract was not unconscionable.

---

[6] This is the opposite of the presumption on review of whether a merits-related dispute is arbitrable. There, the presumption favors arbitration. *Moses H. Cone Mem. Hosp.*, supra.

"An unconscionable contract is one abhorrent to good morals and conscience. It is one where one of the parties takes a fraudulent advantage of another." (Punctuation and emphasis omitted.) *F. N. Roberts Pest Control Co. v. McDonald*, 132 Ga. App. 257, 260 (3) (208 SE2d 13) (1974). "It is an agreement that no sane person not acting under a delusion would make and that no honest person would take advantage of. [Cits.]" *W. J. Cooney, P.C.*, supra at 704.

As we have held, the mere existence of an arbitration clause does not amount to unconscionability. Further, lack of sophistication or economic disadvantage of one attacking arbitration will not amount to unconscionability. See *Green Tree Financial Corp. &c. v. Vintson*, 753 S2d 497 (Ala. 1999); *Wampler*, supra; *Ex parte Smith*, 736 S2d 604, 612-613 (Ala. 1999); *Ex parte Parker*, 730 S2d 168 (Ala. 1999); see also *Pridgen v. Green Tree Financial Servicing Corp.*, 88 FSupp.2d 655, 658-659 (S.D. Miss. 2000); *Rhode v. E & T Investments*, 6 FSupp.2d 1322, 1328 (M.D. Ala. 1998).

Therefore, Crawford has failed to show such coercion, either procedural or substantive, that would be a defense to Green Tree's motion to compel arbitration of the merits of the dispute or that would merit the trial court's order that the payments due Green Tree be made into the registry of the court pending resolution of the dispute.

2. Also, the trial court erred in finding that arbitration was precluded as to Green Tree based on the Magnuson-Moss Warranty Act, supra.

While that Act does preclude a warrantor from denying the right of a consumer to litigate instead of arbitrate a warranty dispute, Green Tree is neither "a supplier, warrantor, or service contractor" covered by that Act. 15 USC §§ 2301 (4), (5), (8); 2310 (d), (f).

### Case No. A00A0540

3. Assured also enumerates as error the trial court's finding that the arbitration clause was unconscionable. That issue is controlled by our holdings, supra. The trial court erred in denying the motion of Assured to compel arbitration of the merits of the dispute.[7]

### Case No. A00A0541

4. Cavalier's enumeration that the trial court improperly denied its motion to compel arbitration of nonwarranty issues based on

---

[7] As requested by Crawford, because the trial court did not specifically rule on the applicability of Magnuson-Moss to Assured, upon remand Crawford shall have an opportunity to brief and argue this matter.

unconscionability is controlled by our holdings in Case No. A00A0542.

5. Cavalier also contends that the trial court improperly denied its motion based on the Magnuson-Moss Warranty Act, supra. The trial court relied on *Southern Energy Homes v. Lee*, 732 S2d 994 (Ala. 1999) for its conclusion that express warranty claims had to be litigated under that Act.

That case, however, has recently been reversed by *Southern Energy Homes v. Ard*, 772 S2d 1131 (Ala. 2000), based on an extensive analysis by Justice See (originally contained in his dissent in *Lee*) of United States Supreme Court cases discussing the FAA and its relationship with other federal statutes.[8] That analysis is hereby adopted by this Court, and we conclude that the Magnuson-Moss Warranty Act does not preclude arbitration of express warranty claims.

Implied warranty claims have previously been found subject to arbitration by federal district courts, and we adopt their rationale regarding those claims. *Rhode*, supra; *Boyd v. Homes of Legend*, 981 FSupp. 1423 (M.D. Ala. 1997).

Therefore, the trial court also erred in not granting Cavalier's motion to compel arbitration of the express and implied warranty claims.

*Judgments reversed and cases remanded. Ruffin and Ellington, JJ., concur.*

DECIDED JULY 31, 2000

*Phears & Moldovan, Victor L. Moldovan*, for appellant (case no. A00A0540).

*Chambers, Mabry, McClelland & Brooks, Rex D. Smith, Ian R. Rapaport, Beth S. Reeves*, for appellant (case no. A00A0541).

*Kenney & Solomon, Thomas S. Kenney, Debbie W. Flesch*, for appellant (case no. A00A0542).

*T. Michael Flinn*, for appellee.

*David A. Webster*, amicus curiae.

---

[8] There is no United States Supreme Court case addressing the Magnuson-Moss Warranty Act and the FAA.