MICHAEL BOROWIEC, Plaintiff-Appellee, v. GATEWAY 2000, INC., Defendant-Appellant.—TADEUSZ KOBIK *et al.*, Plaintiffs-Appellees, v. GATEWAY, INC., Defendant-Appellant.—LESLIE WALDRON, Plaintiff-Appellee, v. GATEWAY, INC., Defendant-Appellant.

First District (5th Division)   Nos. 1—01—0480, 1—01—4187, 1—02—0001 cons.

Opinion filed May 31, 2002.

Adducci, Dorf, Lehner, Mitchell & Blankenship, P.C., of Chicago (James D. Adducci and Marshall L. Blankenship, of counsel), for appellant.

Krohn & Moss, Ltd., of Chicago (Adam J. Krohn, of counsel), for appellees.

JUSTICE REID delivered the opinion of the court:

The defendant, Gateway, Inc., appeals the trial courts' orders

which denied its motions to dismiss. The plaintiffs, Michael Borowiec, Tadeusz and Dorota Kobik, and Leslie Waldron, purchased personal computers from Gateway and subsequently sued in their individual capacities to recover damages alleging: (1) breach of express and implied warranty pursuant to the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act (Warranty Act) (15 U.S.C. § 2301 *et seq.* (1994)), (2) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 1998)) and (3) common law fraud. Gateway moved to have the complaints dismissed pursuant to sections 2—615 and 2—619 of the Illinois Code of Civil Procedure (735 ILCS 5/2—615, 2—619 (West 1998)). The trial courts denied Gateway's motions to dismiss. The cases were subsequently consolidated, and this appeal ensued. The main issue before this court, which is one of first impression, is whether a written warranty governed by the Warranty Act can require a consumer to submit to binding arbitration, or simply, does the Warranty Act preclude binding arbitration? For the reasons that follow, we affirm the decisions of the trial courts.

# I

## THE FACTS

### A. Michael Borowiec

On or about November 18, 1999, Borowiec purchased a Gateway Performance 600 PC computer from Gateway, Inc. (Gateway), which was formerly doing business as Gateway 2000, Inc. The sale and purchase of the computer were subject to Gateway's "Limited Warranty and Terms and Conditions Agreement." Upon receiving the computer in the mail, Borowiec discovered that it was defective. On three different occasions, Borowiec attempted to have Gateway repair the computer. After Gateway failed to repair the computer, Borowiec subsequently revoked acceptance of it and sued to recover damages.

On May 26, 2000, Borowiec filed a four-count complaint against Gateway alleging: (1) violations of the Warranty Act, (2) violation of the Consumer Fraud and Deceptive Business Practices Act, and (3) common law fraud. Gateway filed a motion to dismiss Borowiec's complaint pursuant to section 2—615 for lack of subject matter jurisdiction and to compel arbitration. On September 20, 2000, the trial court denied Gateway's motion to dismiss. Following an unsuccessful attempt to have the cause removed to federal court, Gateway timely filed a notice of appeal.

### B. Tadeusz and Dorota Kobik

On or about January 31, 2001, the Kobiks purchased a Gateway

Performance 1000 PC computer and services from Gateway Country Stores LLP (Gateway). The sale and purchase of the computer were subject to Gateway's "Limited Warranty and Terms and Conditions Agreement." Upon receiving the computer, the Kobiks realized that it was defective. After unsuccessfully attempting to have Gateway cure the defects, the Kobiks revoked acceptance of the computer and brought suit against Gateway to recover damages. On September 13, 2001, the Kobiks filed a three-count complaint wherein they alleged: (1) violations of the Warranty Act, and (2) violations of the Consumer Fraud and Deceptive Business Practices Act. Gateway subsequently filed a motion to dismiss or alternatively to compel arbitration and stay proceedings pending completion of arbitration pursuant to section 2—619. The trial court denied Gateway's motion on November 27, 2001, and Gateway timely filed a notice of appeal.

## C. Leslie Waldron

On or about November 14, 2000, Waldron purchased a Gateway Essential 866 computer and services from Gateway Direct LP (Gateway). The sale and purchase of the computer were subject to Gateway's "Limited Warranty and Terms and Conditions Agreement." After receiving the computer in the mail, Waldron discovered that it was defective. After several failed attempts to have Gateway cure the defects, Waldron revoked acceptance of the computer.

On October 19, 2001, Waldron filed a four-count complaint wherein she alleged: (1) violations of the Warranty Act, and (2) violations of the Consumer Fraud and Deceptive Business Practices Act. On November 21, 2001, Gateway filed a motion to dismiss or alternatively to compel arbitration and stay proceedings pending completion of arbitration pursuant to section 2—619. The trial court denied Gateway's motion to dismiss on December 20, 2001, and Gateway timely filed its notice of appeal the same day.

## D. Gateway's Warranty Agreement

It is undisputed that Gateway's "Limited Warranty and Terms and Conditions Agreement" governed the purchase of the computers in all three matters. In each of the plaintiffs' "Limited Warranty and Terms and Conditions Agreement" there appears a dispute resolution clause. The dispute resolution clause is identical in all the plaintiffs' warranties and is as follows:

> "You agree that any Dispute between You and Gateway will be resolved exclusively and finally by arbitration administered by the National Arbitration Forum (NAF) ***. *** Any decision rendered in such arbitration proceedings will be final and binding on each of the parties ***. *** **You understand that You would have had**

a right to litigate disputes through a court, and that You have expressly and knowingly waived that right and agreed to resolve any Disputes through binding arbitration. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Section 1, *et seq.*"

## E. Consolidation of the Cases

In each of Gateway's motions to dismiss, Gateway argued that dismissal was proper because the "Limited Warranty and Terms and Conditions Agreement" requires all disputes between Gateway and its customers to be resolved through binding arbitration pursuant to the Federal Arbitration Act (FAA) (9 U.S.C. § 1 *et seq.* (1994)). In response, the plaintiffs argued that the Warranty Act precludes binding arbitration, and as such, the arbitration agreement in Gateway's warranty is unenforceable. On February 11, 2002, the three cases were consolidated.

## II

## ANALYSIS

■ The issue before this court is whether the trial courts erred when they denied Gateway's motions to dismiss pursuant to sections 2—615 and 2—619. "A section 2—615 motion poses the question of whether the complaint states a cause of action upon which relief can be granted. [Citation.] A section 2—619 motion, on the other hand, raises certain defects or defenses and questions whether defendant is entitled to judgment as a matter of law. [Citation.] Since the resolution of either motion only involves a question of law, the standard of review is *de novo*. [Citation.] On a motion to dismiss, this court must accept all well-pleaded facts as true. [Citation.]" *In re Parentage of M.J.*, 325 Ill. App. 3d 826, 829 (2001).

On appeal, Gateway argues that the trial courts erred when they denied its motions to dismiss pursuant to sections 2—615 and 2—619. Specifically, Gateway maintains that when the plaintiffs accepted the terms in the warranty agreement, they agreed to resolve any dispute with Gateway through binding arbitration, and subsequently, the trial courts erred when they did not dismiss the plaintiffs' complaints and enforce the binding arbitration clause in the warranty.

In reply, the plaintiffs assert that the binding arbitration clause in Gateway's warranty violates the Warranty Act, and as such is unenforceable. In particular, the plaintiffs contend that the Warranty Act preserves for consumers the right to ultimately have their disputes with warrantors settled in a judicial forum and consequently precludes binding arbitration. We agree.

## A. The Warranty Act and the FAA

■ In 1975, Congress enacted the Warranty Act in order "to improve the adequacy of information available to consumers [and] prevent deception" in connection with written warranties issued with consumer products. 15 U.S.C. § 2302(a) (1994). The Warranty Act sets out clear and comprehensive requirements regarding disclosures, duties, and remedies associated with warranties on consumer products. Products covered by the Warranty Act include any "tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes." 15 U.S.C. § 2301(1) (1994).

■ In 1925, Congress passed the FAA to reverse the long-standing judicial hostility to arbitration agreements and to place arbitration agreements upon the same footing as other contracts. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 114 L. Ed. 2d 26, 36, 111 S. Ct. 1647, 1651 (1991); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111, 149 L. Ed. 2d 234, 244, 121 S. Ct. 1302, 1307 (2001). The FAA provides:

> "A written provision in any *** contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1994).

The United States Supreme Court has recognized an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631, 87 L. Ed. 2d 444, 458, 105 S. Ct. 3346, 3356 (1985). To further this purpose, the FAA compels judicial enforcement of a wide range of written arbitration agreements. *Circuit City Stores, Inc.*, 532 U.S. at 111, 149 L. Ed. 2d at 244, 121 S. Ct. at 1307. Only a contrary congressional command can override the FAA's mandate to enforce arbitration agreements. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 96 L. Ed. 2d 185, 194, 107 S. Ct. 2332, 2337 (1987). Thus, to overcome the presumption favoring arbitration agreements, the party opposing arbitration must show that Congress intended to preclude a party's waiving a statute's judicial remedies. *McMahon*, 482 U.S. at 227, 96 L. Ed. 2d at 194, 107 S. Ct. at 2337.

■ The Supreme Court has articulated a test for determining whether a federal statute may override the FAA's directive to enforce arbitration agreements. In essence, this test requires the party oppos-

ing arbitration to show a clear congressional intent to override the FAA's mandate to enforce binding arbitration agreements. According to the Supreme Court, this congressional intent must be evidenced in the statute's text, history or through an inherent conflict between arbitration and the statute's purposes. *McMahon*, 482 U.S. at 226-27, 96 L. Ed. 2d at 194, 107 S. Ct. at 2337. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration ***." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25, 74 L. Ed. 2d 765, 785, 103 S. Ct. 927, 941 (1983).

### B. Other Jurisdictions

We note that there is a split among the courts that have visited this issue. The cases which support the position that the Warranty Act precludes binding arbitration are as follows: *Wilson v. Waverlee Homes, Inc.*, 954 F. Supp. 1530 (M.D. Ala. 1997); *Boyd v. Homes of Legend, Inc.*, 981 F. Supp. 1423 (M.D. Ala. 1997); *Rhode v. E&T Investments, Inc.*, 6 F. Supp. 2d 1322 (M.D. Ala. 1998); *Pitchford v. Oakwood Mobile Homes, Inc.*, 124 F. Supp. 2d 958 (W.D. Va. 2000); *Raesly v. Grand Housing, Inc.*, 105 F. Supp. 2d 562 (S.D. Miss. 2000); and *Philyaw v. Platinum Enterprise, Inc.*, No. CL00—236 (Va. Cir. Ct. 2001).

We agree with the rationale of these cases and for the reasons that follow, we reject the reasoning of the following cases, which were relied on by Gateway: *Southern Energy Homes, Inc. v. Ard*, 772 So. 2d 1131, 1135 (Ala. 2000) (followed the dissent in *Southern Energy Homes, Inc. v. Lee*, 732 So. 2d 994 (Ala. 1999)); *Results Oriented, Inc. v. Crawford*, 245 Ga. App. 432, 538 S.E.2d 73 (2000); *In re Homestar of Lancaster*, 50 S.W.3d 480 (Tex. 2001); and *Palm Harbor Home, Inc. v. Turner*, 796 So. 2d 295 (Ala. 2001).

### C. Text of the Warranty Act

■ An examination of the Warranty Act's text shows that it was Congress' intent to ultimately preserve a judicial forum for consumers.

The Warranty Act provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1) (1994). The Warranty Act recognizes only one exception to this entitlement and, hence, provides for the establishment of "informal dispute settlement mechanisms" (15 U.S.C. § 2310(a)(1) (1994)) or "informal dispute settlement procedures" (15 U.S.C. § 2310(a)(3) (1994)).

Warrantors may establish "informal dispute settlement mechanisms" to further the congressional goal of encouraging consumers

and warrantors to settle their disputes. Section 2310(a)(1) of the Warranty Act states that "Congress hereby declares it to be its policy to encourage warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms." 15 U.S.C. § 2310(a)(1) (1994).

These informal dispute settlement mechanisms are proper so long as they comply with the Federal Trade Commission's (FTC) minimum standards. 15 U.S.C. §§ 2310(a)(2), (a)(3) (1994). The Warranty Act authorizes the FTC to prescribe rules about the presale disclosure of a written warranty's terms and conditions and the minimum federal requirements for any informal dispute settlement mechanism incorporated in a written warranty. 15 U.S.C. §§ 2302(b)(1)(A), 2310(a)(2) (1994).

If the informal dispute settlement mechanisms comply with FTC regulations and if the written warranty states that the consumer must resort to this procedure before pursuing any legal remedy, then "the consumer may not commence a civil action *** unless he initially resorts to such procedure." 15 U.S.C. § 2310(a)(3) (1994). The Warranty Act states that "in any civil action arising out of a warranty obligation and relating to a matter considered in such a procedure, any decision in such procedure shall be admissible in evidence." 15 U.S.C. § 2310(a)(3)(C) (1994).

In other words, the informal dispute settlement procedures are a prerequisite, not a bar, to relief in court. "[T]he consumer may not commence a civil action *** unless he initially resorts to such procedure." 15 U.S.C. § 2310(a) (1994). The consumer must *first* try to settle his or her dispute with the warrantor by resorting to an informal dispute settlement procedure. If the consumer is dissatisfied with the result reached in the informal dispute settlement, the consumer may then commence a civil action and the results of the informal dispute settlement procedure shall be admissible as evidence.

### D. Legislative History of the Warranty Act

A review of the legislative history of the Warranty Act provides further evidence that Congress intended for consumers to retain the right to have their disputes with warrantors decided in the courts. Specifically, remarks made by one of the sponsors of the bill, Congressman Moss, show that the informal dispute settlement mechanism was intended to act as a prerequisite to consumers seeking relief in the court.

Congressman Moss's remarks follow:

"First, the bill provides the consumer with an economically, feasible private right of action so that when a warrantor breaches

his warranty or service contract obligations, the consumer can have effective redress. Reasonable attorneys fees and expenses are provided for the successful consumer litigant, and the bill is further refined so as to place a minimum extra burden on the courts by requiring as *a prerequisite to suit* that the purchaser give the [warrantor] reasonable opportunity to settle the dispute out of court, including the use of a fair and formal dispute settlement mechanism which the bill encourages [warrantors] to set up under the general supervision of the Federal Trade Commission." (Emphasis added.) 119 Cong. Rec. 972 (1973)

Congressman Moss's remarks show that the informal dispute settlement mechanisms or procedures are simply a "prerequisite" and not a bar to suit. The mechanisms were created to act as a filter as opposed to a stopper.

■ The report on the bill makes this point even clearer. The report states that "[a]n adverse decision in any informal dispute settlement proceeding would not be a bar to a civil action on the warranty involved in the proceeding, but the decision reached in any informal dispute settlement procedure relating to any matter considered in such procedure would be admissible in any civil action arising out of a warranty on a consumer product." H.R. Rep. No. 93—1107 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7702, 7723.

### E. FTC Regulations

■ The regulations adopted by the FTC pursuant to the Warranty Act provide more evidence of an intent that consumers have final access to the courts. In particular, the regulations show that the informal dispute settlement procedure was meant to act only as a prerequisite and not as a bar to a consumer ultimately going to court.

The first evidence appears in 16 C.F.R. § 700.8 (2001). The section is entitled "Warrantor's decision as final" and states:

"A warrantor shall not indicate in any written warranty *** either directly or indirectly that the decision of the warrantor *** or any designated third party is final or binding in any dispute concerning the warranty ***. Nor shall a warrantor *** state that it alone shall determine what is a defect under the agreement. Such statements are deceptive since section 110(d) of the Act gives state and federal courts jurisdiction over suits for breach of warranty ***." 16 C.F.R. § 700.8 (2001).

Stronger evidence is found further in the regulations. Under the regulations, a "mechanism" is defined as an informal dispute settlement procedure which is incorporated into the terms of a written warranty. 16 C.F.R. § 703.1(e) (2001). The regulations require that a "mechanism" comply with the requirements prescribed by the FTC

and contained in 16 C.F.R. §§ 703.3 through 703.8. 16 C.F.R. § 703.2(a) (2001). The regulations then state that the *"[d]ecisions of the Mechanism shall not be legally binding on any person.* \*\*\* In any civil action arising out of a warranty obligation and relating to a matter considered by the Mechanism, any decision of the Mechanism shall be admissible in evidence \*\*\*." (Emphasis added.) 16 C.F.R. § 703.5(j) (2001).

Moreover, and to bring this point further home, the regulations add that "The mechanism shall inform the consumer \*\*\* that \*\*\* [i]f he or she is dissatisfied with its decision or warrantor's intended actions, or eventual performance, legal remedies, including use of small claims court, may be pursued." 16 C.F.R. § 703.5(g) (2001).

Finally, if any doubt remains about whether the Warranty Act precludes binding arbitration agreements, our examination of the remarks made by the FTC upon adopting 16 C.F.R. § 703.5(j) show that binding arbitration is precluded under the Warranty Act. The FTC's comments are as follows:

> "Several industry representatives contended that warrantors should be allowed to require consumers to resort to mechanisms whose decisions would be legally binding (e.g., binding arbitration). The Rule does not allow for this for two reasons. First, \*\*\* Congressional intent was that Section 110 Mechanisms not be legally binding. Second, even if binding Mechanisms were contemplated by Section 110 of the Act, the Commission is not prepared, at this point in time, to develop guidelines for a system in which consumers would commit themselves, at the time of product purchase, to resolve any difficulties in a binding, but nonjudicial, proceeding. The Commission is not now convinced that any guidelines which it set out could ensure sufficient protection for consumers." 40 Fed. Reg. 60168, 60210 (1975).

The Commission goes on to state:

> "The warrantor, the Mechanism, or any other group can offer a binding arbitration option to consumers who are dissatisfied with Mechanism decisions or warrantor intentions. However, reference within the written warranty to any binding, nonjudicial remedy is prohibited by the Rule and the Act." 40 Fed. Reg. at 60211.

■ Here, Gateway's "Limited Warranty and Terms and Conditions Agreement" contains a binding arbitration clause. This clause is in violation of the Warranty Act and is therefore unenforceable. As such, the trial courts' decisions are affirmed.

## III
## CONCLUSION

For the foregoing reasons, the decisions of the trial courts are affirmed.

Affirmed.

CAMPBELL, P.J. and GREIMAN, J., concur.