ABELA v GENERAL MOTORS CORPORATION

Docket No. 236238. Submitted June 11, 2003, at Detroit. Decided July 15, 2003, at 9:00 A.M. Leave to appeal sought.

John and Barbara Abela brought an action in the Oakland Circuit Court against General Motors Corporation, alleging that a vehicle purchased by the plaintiffs through the defendant's new vehicle purchase program was defective. The plaintiffs alleged violations of the Magnuson-Moss Warranty Act (MMWA), 15 USC 2301 *et seq.*; the Michigan warranties on new motor vehicles act (the lemon law), MCL 257.1401 *et seq.*; and the Michigan Consumer Protection Act, MCL 445.901 *et seq.* The defendant moved for summary disposition on the basis that the plaintiffs had agreed to arbitrate any claims they had against the defendant and had failed to submit their claims to arbitration. The court, David F. Breck, J., denied the defendant's motion and granted summary disposition in favor of the plaintiffs on the basis that defendant failed to state a valid defense. A final order affirming that order and resolving the last pending issues in the case was thereafter entered by the court, Edward Sosnick, J. The defendant appealed.

The Court of Appeals *held*:

1. The federal circuit courts of appeal have consistently held that the MMWA permits agreements for binding arbitration of disputes such as the warranty-related claims presented in this case. The Court of Appeals is bound by those holdings with regard to questions of federal law. The MMWA permits the enforcement of binding arbitration agreements within written warranties. The trial court erred in denying the defendant's motion for summary disposition with regard to this claim.

2. The Federal Arbitration Act, 9 USC 1 *et seq.*, preempts any state law that invalidates agreements to submit claims to binding arbitration. The trial court erred in holding that the agreement to arbitrate warranty-related claims was unenforceable under the state lemon law on the basis that the lemon law forbids such agreements. The orders of the trial court must be reversed and the matter must be remanded for entry of an order of summary disposition in favor of the defendant.

Reversed and remanded.

MURPHY, J., concurring, wrote separately to note his disagreement with the federal appellate courts with regard to the proper interpretation to be given the MMWA and the Federal Arbitration Act. The MMWA, as reasonably interpreted by the Federal Trade Commission, precludes the application of binding arbitration agreements to claims arising under the MMWA.

1. ARBITRATION — WARRANTIES.

The Magnuson-Moss Warranty Act permits the enforcement of binding arbitration agreements within written warranties (15 USC 2301 *et seq.*).

2. CONFLICT OF LAWS — ARBITRATION — WARRANTIES.

The Federal Arbitration Act preempts any state law that invalidates agreements to submit warranty-related claims to binding arbitration (9 USC 1 *et seq.*).

*Mantese, Miller and Shea, P.L.L.C.* (by *E. Powell Miller* and *Gerard Mantese*), and Consumer Legal Services, P.C. (by *Christopher M. Lovasz* and *Mark Romano*), and Trial Lawyers for Public Justice, P.C. (by *F. Paul Bland, Jr.,* and *Michael J. Quirk*), for the plaintiffs.

*Feeney Kellett Wienner & Bush, P.C.* (by *S. Thomas Wienner* and *Seth D. Gould*), and *Kirkland & Ellis* (by *Richard C. Godfrey* and *J. Robert Robertson*) (*Carol H. Lesnek-Cooper,* of counsel) for the defendant.

Amicus Curiae:

*Clark Hill PLC* (by *F. R. Damm* and *Paul C. Smith*) for Michigan Manufacturers Association.

Before: GRIFFIN, P.J., and MURPHY and JANSEN, JJ.

JANSEN, J. Defendant appeals as of right from an order resolving all pending claims and closing the case in this action brought under the Magnuson-Moss Warranty Act (hereinafter MMWA), 15 USC 2301 *et seq.*;

Michigan's warranties on new motor vehicles act (hereinafter lemon law), MCL 257.1401 *et seq.*; and Michigan's Consumer Protection Act (hereinafter MCPA), MCL 445.901 *et seq.*[1] Although the order appealed from is the final order in this case, defendant's arguments on appeal take issue with the trial court's denial of defendant's motion for summary disposition to compel arbitration, as well as the trial court's grant of summary disposition in favor of plaintiffs pursuant to MCR 2.116(C)(9), for failing to state a valid defense.[2] We reverse and remand.

The lone issue in this case is whether the agreement between plaintiffs and defendant to submit any warranty claims to binding arbitration must be enforced. Plaintiffs argue that the MMWA and, alternately, the Michigan lemon law preclude a party from waiving the right to pursue legal action in a judicial forum. Plaintiffs assert that, under the MMWA and the Michigan lemon law, the agreement that the parties entered into, requiring binding arbitration of disputes, is unenforceable.[3] Defendant, on the other hand, maintains that the Federal Arbitration Act (FAA), 9

---

[1] We note that the Attorney General was an intervening plaintiff. However, the July 30, 2001, order appealed from dismisses the Attorney General as a party.

[2] We note that the parties' pleadings intermittently refer to Barbara Abela as the lone plaintiff, as well as to Barbara and John Abela jointly as plaintiffs. In this opinion, Barbara Abela and John Abela will be referred to collectively as plaintiffs.

[3] On appeal, plaintiffs raise the issue that defendant's placement of the arbitration clause outside the warranty violates the MMWA "one document" rule. An appellate court need not address issues first raised on appeal. *Booth Newspapers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993); *Higgins Lake Prop Owners Ass'n v Gerrish Twp*, 255 Mich App 83, 117; 662 NW2d 387 (2003). We decline to address this issue, because there is no indication on this record that it was raised before the lower court. *Booth Newspapers, supra; Higgins Lake, supra.* Further, our refusal to address this unpreserved issue will not result in

USC 1 *et seq.*, requires enforcement of otherwise valid agreements to arbitrate.

Plaintiffs purchased a 1999 Chevrolet truck from John Bowman Chevrolet, a dealership that sells automobiles that defendant manufactures. At the time of the purchase, defendant offered plaintiffs various warranties related to the automobile. In addition to those warranties, plaintiffs entered into defendant's new vehicle purchase program. This purchase program was offered to, among other people, defendant's employees. On the agreement form, for this purchase, plaintiff John Abela is listed as the purchaser of the truck, and his spouse, plaintiff Barbara Abela, is the eligible employee. Although all the terms of this purchase program are not clearly set forth, defendant represents, and plaintiffs do not dispute, that a purchaser agreeing to participate in the purchase program could purchase a car for "either dealer cost or dealer cost + 2.5% of the MSRP [manufacturer's suggested retail price], depending on whether the participant purchased the car from dealer stock or directly from [defendant]."

The key provision of the purchase program agreement states:

> In addition, if I am the purchaser/lessee, I understand that, in consideration of the discount I receive on the purchase or lease of the vehicle, *I will not be able to bring lawsuit for any dispute involving repairs made to that vehicle under GM's Limited Warranty or regarding the extent to which such warranty coverage is provided on that vehicle. Instead, I AGREE to address such disputes through the GM Dispute Resolution Process, which includes*

---

manifest injustice. *Herald Co, Inc v Kalamazoo*, 229 Mich App 376, 390; 581 NW2d 295 (1998).

> *mandatory arbitration that is binding on both GM and me.*
> I acknowledge that this Certificate evidences a transaction
> involving interstate commerce. The Federal Arbitration Act
> . . . shall govern the interpretation, enforcement, and pro-
> ceedings of the arbitration. For matters the FAA does not
> cover, the laws of the State in which I reside shall govern.
> [Emphasis in original.]

Plaintiffs, apparently, encountered several prob-
lems with the truck that required numerous repairs
by defendant and the dealership, and brought suit.
Immediately following the filing of the complaint,
defendant moved for summary disposition pursuant
to MCR 2.116(C)(7), alleging that plaintiffs had agreed
to arbitrate any claims that they had against
defendant.

Defendant's first issue on appeal is that the trial
court erred as a matter of law in holding that plain-
tiffs can breach the agreement to arbitrate warranty-
related disputes with defendant because the MMWA
bars the application of the FAA. We agree.

The trial court granted summary disposition in
favor of plaintiffs pursuant to MCR 2.116(C)(9), for
failure to state a valid defense. Our Court set forth
the applicable standard of review for a motion under
MCR 2.116(C)(9) in *Slater v Ann Arbor Pub Schools
Bd of Ed*, 250 Mich App 419, 425-426; 648 NW2d 205
(2002), as follows:

> This Court reviews de novo the trial court's grant or
> denial of a motion for summary disposition. *Schulz v North-
> ville Public Schools*, 247 Mich App 178, 182; 635 NW2d 508
> (2001). When deciding a motion under MCR 2.116(C)(9),
> which tests the sufficiency of a defendant's pleadings, the
> trial court must accept as true all well-pleaded allegations
> and properly grants summary disposition where a defendant
> fails to plead a valid defense to a claim. *Village of
> Dimondale v Grable*, 240 Mich App 553, 564; 618 NW2d 23

(2000). . . . Summary disposition under MCR 2.116(C)(9) is proper when the defendant's pleadings are so clearly untenable that as a matter of law no factual development could possibly deny the plaintiff's right to recovery. *Alcona Co v Wolverine Environmental Production, Inc*, 233 Mich App 238, 245-246; 590 NW2d 586 (1998). Statutory interpretation is a question of law also reviewed de novo on appeal. *Id.* at 246.

The trial court ruled that defendant's program for binding arbitration was contrary to federal law. The trial court noted that the MMWA and the federal regulations interpreting it permit a consumer to bring an action for damages and other relief in court. The trial court also noted that if the warrantor establishes an informal dispute settlement procedure that complies with the regulations, the consumer must use that mechanism, although the consumer is not bound by that decision. The trial court continued that the FAA was not instructive, because the MMWA was more specific in the area of arbitration in the area of warranties and was more recent. Accordingly, the trial court determined that the MMWA, and not the FAA, was controlling on this issue, and that the MMWA prohibited the use of binding arbitration for warranty claims.

Defendant asserts that the trial court erred as a matter of law in finding that the MMWA prohibited the use of binding arbitration for warranty claims. Specifically, defendant contends that the trial court's ruling is contrary to years of case law, both state and federal, that permit and uphold agreements for binding arbitration of disputes such as the warranty-related claims presented here.[4]

---

[4] In fact, as defendant points out, the United States Supreme Court has approved application of the FAA to numerous statutes, including statutes with remedial purposes. For example, the Supreme Court has approved of

As a general rule, the MMWA provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief . . . ." 15 USC 2310(d)(1). In keeping with its stated purpose that "Congress hereby declares it to be its policy to encourage warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms," 15 USC 2310(a)(1), the MMWA provides in 15 USC 2310(a)(3) that a warrantor may develop its own dispute settlement procedure. That provision in 15 USC 2310(a)(3) reads, in part:

If—

(A) a warrantor establishes such a procedure,

(B) such procedure, and its implementation, meets the requirements of such rules, and

(C) he incorporates in a written warranty a requirement that the consumer resort to such procedure before pursuing any legal remedy under this section respecting such warranty,

---

agreements to arbitrate claims brought under the following statutes: the Age Discrimination in Employment Act, 29 USC 621 *et seq.*, in *Gilmer v Interstate/Johnson Lane Corp*, 500 US 20; 111 S Ct 1647; 114 L Ed 2d 26 (1991); the Truth in Lending Act, 15 USC 1601 *et seq.*, in *Green Tree Financial Corp v Randolph*, 531 US 79; 121 S Ct 513; 148 L Ed 2d 373 (2000); the Sherman Act, 15 USC 1 *et seq.*, in *Mitsubishi Motors Corp v Soler Chrysler-Plymouth, Inc*, 473 US 614; 105 S Ct 3346; 87 L Ed 2d 444 (1985); and the Racketeer Influenced and Corrupt Organizations Act, 18 USC 1961 *et seq.*, in *Shearson/American Express Inc v McMahon*, 482 US 220, 242; 107 S Ct 2332; 96 L Ed 2d 185 (1987). In fact, as amicus curiae, Michigan Manufacturers Association, notes, the Supreme Court has upheld application of the FAA to every statutory claim that it has entertained. See Comment, *Arbitrating Consumer Claims under the Magnuson-Moss Warranty Act*, 68 U Chi L Rev 1459, 1464 (2001).

then (i) the consumer may not commence a civil action
(other than a class action) under subsection (d) of this sec-
tion unless he initially resorts to such procedure . . . .

Thus, if a warrantor has an informal dispute settle-
ment procedure in place, any warranty claim must be
submitted for resolution under that procedure before
a suit may be filed.

The Federal Trade Commission (FTC) was empow-
ered to develop the minimum requirements for the
informal dispute settlement mechanisms. 15 USC
2310(a)(2). By its very terms, the FTC guidelines spe-
cifically preclude a warrantor from implementing a
procedure that is binding on the consumer, and that
precludes bringing suit, 16 CFR 703.5(j) ("Decisions
of the Mechanism shall not be legally binding on any
person."). Moreover, a review of the FTC's response to
public comments regarding the issue of binding arbi-
tration indicates that the FTC was of the opinion that
informal dispute settlement mechanisms, provided for
in the MMWA, were intended to be nonbinding:

"Several industry representatives contended that warran-
tors should be allowed to require consumers to resort to
mechanisms whose decisions would be legally binding (e.g.,
binding arbitration). The Rule does not allow for this for
two reasons. First, . . . Congressional intent was that Sec-
tion 110 Mechanisms not be legally binding. Second, even if
binding Mechanisms were contemplated by Section 110 of
the Act, the Commission is not prepared, at this point in
time, to develop guidelines for a system in which consum-
ers would commit themselves, at the time of product
purchase, to resolve any difficulties in a binding, but non-
judicial, proceeding. The Commission is not now convinced
that any guidelines which it set out could ensure sufficient
protection for consumers against warrantors, even if the
Congressional report had not made clear, as it did, that it
wished for such mechanisms to not be binding." [40 Fed

Reg 60168, 60210 (1975), quoted in *Wilson v Waverlee Homes, Inc*, 954 F Supp 1530, 1539 (MD Ala, 1997).]

The Michigan Supreme Court has "repeatedly given great deference to the construction placed upon a statute by the agency legislatively chosen to enforce it." *Breuhan v Plymouth-Canton Community Schools*, 425 Mich 278, 282-283; 389 NW2d 85 (1986), citing *Magreta v Ambassador Steel Co*, 380 Mich 513, 519; 158 NW2d 473 (1968).

However, in *Walton v Rose Mobile Homes LLC*, 298 F3d 470, 478 (CA 5, 2002), the United States Court of Appeals for the Fifth Circuit held that the text, legislative history, and purpose of the MMWA does "not evince a congressional intent to bar arbitration of MMWA written warranty claims." Additionally, the *Walton* court held "that the MMWA does not preclude binding arbitration of claims pursuant to" the FAA. *Id.* at 479. Therefore, the *Walton* court found that a purchaser's MMWA claim was subject to compulsory arbitration, and that such purchasers were "bound to arbitrate their claims." *Id.*

In *Davis v Southern Energy Homes, Inc*, 305 F3d 1268, 1272 (CA 11, 2002), the United States Court of Appeals for the Eleventh Circuit held that the MMWA permits the enforcement of valid binding arbitration agreements within written warranties. The Eleventh Circuit concluded that the purposes of the MMWA and the FAA are very similar, stating:

The last [*Shearson/American Express, Inc v*] *McMahon* [482 US 220; 107 S Ct 2332; 96 L Ed 2d 185 (1987)] factor requires us to examine the purposes of the MMWA to determine whether the MMWA and the FAA conflict. The MMWA expressly states three purposes: "to improve the adequacy of information available to consumers, prevent deception,

and improve competition in the marketing of consumer products." These purposes are not in conflict with the FAA. In fact, the Supreme Court has repeatedly enforced arbitration of statutory claims where the underlying purpose of the statutes is to protect and inform consumers. . . .

The MMWA's legislative history also indicates that Congress was concerned with addressing the unequal bargaining power between warrantors and consumers with the enactment of the MMWA, thus creating another possible purpose. Unequal bargaining power alone, however, is not a sufficient reason to never enforce an arbitration agreement of a statutory claim. [*Id.* at 1276-1277 (citations omitted).]

In *Davis, supra,* the Eleventh Circuit concluded that the text, history, and purpose of the MMWA did not show a congressional intent to preclude predispute agreements to submit warranty claims to binding arbitration. Moreover, the *Davis* court examined the FTC regulations discussed hereinbefore, and determined that those regulations, which were ostensibly based on the plain language of the MMWA, were unreasonable, as follows:

In the legislative regulations, the FTC bases its construction on Congress' grant of concurrent jurisdiction. As we previously discussed, a statute's provision for a judicial forum does not preclude enforcement of a binding arbitration agreement under the FAA. Thus, the FTC's motive behind the legislative regulation is contradictory to Supreme Court rationale, and we conclude that its interpretation is unreasonable. We also conclude that the FTC's additional rationale is unreasonable. Although the FTC first stated that it looked to a subcommittee staff report (which appears to no longer be attainable) to determine Congress' intent, the FTC continued, evincing its major concern that an arbitral forum will not adequately protect the individual consumers. The Supreme Court in *McMahon,* however, rejected this same hostility shown by the SEC. Instead, the Supreme Court

holds that arbitration is favorable to the individual. [*Id.* at 1280 (citations omitted).]

" 'The interpretation of a federal statute is a question of federal law.' " *Ann Arbor Housing Comm v Wells*, 240 Mich App 610, 614 n 4; 618 NW2d 43 (2000), quoting *Auto-Owners Ins Co v Corduroy Rubber Co*, 177 Mich App 600, 604; 443 NW2d 416 (1989). Where there is no conflict among the circuits of the federal court of appeals on a question of federal law, we are bound by the authoritative holdings of the federal circuit courts on federal questions. See *Schueler v Weintrob*, 360 Mich 621; 105 NW2d 42 (1960); *Woodman v Miesel Sysco Food Co*, 254 Mich App 159, 165; 657 NW2d 122 (2002); *Ann Arbor House Comm*, *supra* at 614 n 4. Both the Fifth Circuit Court of Appeals and the Eleventh Circuit Court of Appeals have ruled that binding arbitration agreements are not prohibited by the MMWA, albeit with a different rationale. We are unaware of any conflict among the federal appellate courts with regard to this issue and, thus, are bound by the holdings of *Walton*, *supra*, and *Davis*, *supra*, to the extent they are consistent in permitting the enforcement of valid binding arbitration agreements within written warranties.[5] Consequently,

---

[5] Although there is no conflict in the federal appellate courts, we note that there is a split of authority in the federal district courts and in the state courts that have addressed the issue. Several courts have found that the FTC regulation barring binding arbitration clauses in warranties is a reasonable interpretation of the MMWA even though the statute does not specifically mention arbitration. See *Browne v Kline Tysons Imports, Inc*, 190 F Supp 2d 827, 831 (ED Va, 2002) (finding that the MMWA precludes binding arbitration in accordance with the FTC interpretation); *Wilson v Waverlee Homes, Inc*, 954 F Supp 1530 (MD Ala, 1997) (finding that the MMWA precludes predispute agreements to submit disputes to binding arbitration); *Borowiec v Gateway 2000, Inc*, 331 Ill App 3d 842, 849; 772 NE2d 256 (2002) (finding that the MMWA precludes predispute agreements to sub-

we find that the trial court erred in granting plaintiffs' motion for summary disposition with regard to plaintiffs' MMWA claim and in denying defendant's motion for summary disposition with regard to this claim.[6]

Defendant's final issue on appeal is that the trial court erred as a matter of law in holding that plaintiff Barbara Abela's agreement to arbitrate warranty-related claims violates the Michigan lemon law. We agree.

We find that the FAA surmounts plaintiffs' lemon law claim. In *DeCaminada v Coopers & Lybrand, LLP*, 232 Mich App 492, 498; 591 NW2d 364 (1998), this Court noted that "[s]tate courts are bound, under the Supremacy Clause, US Const, art VI, cl 2, to enforce the FAA's substantive provisions." The *DeCaminada* Court further indicated:

> This is a crucial distinction, because application of the FAA implicates the Supremacy Clause, which precludes us from applying our state constitution or laws to defeat federal legislation. US Const, art VI, cl 2. Thus, as the United States Supreme Court has held, where the FAA applies, it preempts any state law or policy that specifically invali-

---

mit disputes to binding arbitration); *Parkerson v Smith*, 817 So 2d 529, 535 (Miss, 2002) (holding that the MMWA shows a clear intent to override the FAA and is a more recent and specific statute). But see *Stacy David, Inc v Consuegra*, 845 So 2d 303 (Fla App, 2003) (finding that MMWA claims are subject to predispute binding arbitration agreements); *In re American Homestar of Lancaster, Inc*, 50 SW3d 480 (Tex, 2001) (holding that the MMWA does not prohibit a consumer from agreeing to binding arbitration); *Results Oriented, Inc v Crawford*, 245 Ga App 432, 442; 538 SE2d 73 (2000) (holding that the MMWA does not prohibit a consumer from agreeing to binding arbitration); *Southern Energy Homes, Inc v Ard*, 772 So 2d 1131 (Ala, 2000) (holding that the MMWA does not invalidate an arbitration clause).

[6] In light of our determination with regard to the application of the MMWA to the FAA it is unnecessary for us to address defendant's second issue on appeal that its arbitration was not an informal dispute settlement procedure and, thus, not within the meaning of the MMWA.

dates arbitration agreements. *Doctor's Associates, Inc v Casarotto*, 517 US 681, 686-688; 116 S Ct 1652; 134 L Ed 2d 902 (1996). [*DeCaminada, supra* at 501-502.]

Here, there is no question that the FAA applies. Plaintiffs' only defense to its application is that the MMWA surmounts it, but as we determined, hereinbefore, the MMWA does not surmount the FAA in this regard.[7]

The case law is clear that the FAA surmounts any state law that invalidates agreements to submit claims to binding arbitration. Thus, the trial court erred in ruling that Michigan's lemon law precludes enforcement of predispute agreements to submit claims to binding arbitration. Plaintiffs' lemon law claim should have been resolved through binding arbitration. The trial court erred in ruling that Michigan's lemon law bans binding arbitration because the FAA surmounts applicable state law claims. Because the FAA surmounts any state law, to the extent that that law prohibits a binding arbitration agreement, the trial court erred in granting summary disposition in favor of plaintiffs on the basis that the lemon law forbids agreements to submit to binding arbitration. We reverse on the basis that the lemon law claim should have been resolved in binding arbitration.

We reverse the trial court's grant of summary disposition on plaintiffs' MMWA and lemon law claims, and reverse the trial court's denial of defendant's motion for summary disposition on the MMWA and lemon law

---

[7] We note that such a reading essentially relegates MCL 257.1407(1), which provides that "[a]ny rights and remedies provided a consumer under this act may not be waived," to a nullity. A reading of this provision suggests that a consumer may not waive the right to submit a claim to a judicial forum. However, according to *DeCaminada, supra*, the FAA, which surmounts any state law that invalidates arbitration agreements, permits such an agreement.

claims, because these claim should have been resolved through binding arbitration.

Reversed and remanded to the trial court with instructions to enter judgment in favor of defendant consistent with this opinion. We do not retain jurisdiction.

GRIFFIN, P.J., concurred.

MURPHY, J. *(concurring)*. I concur with the majority that we are required to conclude that warranty claims arising under the Magnuson-Moss Warranty Act (MMWA), 15 USC 2301 *et seq.*, may be subject to valid binding arbitration agreements in light of the holdings in *Davis v Southern Energy Homes, Inc*, 305 F3d 1268 (CA 11, 2002), and *Walton v Rose Mobile Homes LLC*, 298 F3d 470 (CA 5, 2002). We are bound by the authoritative holding of a federal appellate court concerning interpretation of a federal statute absent a conflict among the various federal appellate circuits. *Ann Arbor Housing Comm v Wells*, 240 Mich App 610, 614 n 4; 618 NW2d 43 (2000). A review of federal appellate case law reveals no conflict with the holdings in *Davis* and *Walton, supra*, although there has been a split of authority in the federal district courts and in state courts as acknowledged by the majority.

I also concur with the majority that plaintiffs' claim under Michigan's lemon law, MCL 257.1401 *et seq.*, is precluded by the doctrine of preemption, which is predicated on the Supremacy Clause, US Const, art VI, cl 2, and which mandates state courts to enforce the substantive provisions of the Federal Arbitration Act (FAA), 9 USC 1 *et seq.*, regardless of state law to the contrary, unless the state law concerns the validity, revocability, and enforceability of contracts gener-

ally. *Doctor's Associates, Inc v Casarotto*, 517 US 681, 686-688; 116 S Ct 1652; 134 L Ed 2d 902 (1996); see also *DeCaminada v Coopers & Lybrand, LLP*, 232 Mich App 492, 498; 591 NW2d 364 (1998).

I write separately to merely voice my disagreement with the federal appellate court rulings on the interpretation of the MMWA and the FAA. I agree with the dissenting opinion of Chief Judge King in *Walton*, *supra* at 480. After a very reasoned analysis, Chief Judge King concluded:

> Accordingly, because I find that Congress has not "directly spoken to the precise question" whether binding arbitration clauses in written warranties governed by the MMWA are enforceable, and because the FTC's construction of the statute is eminently reasonable, I would defer to the Commission's expertise and affirm the district court's judgment refusing to compel arbitration of the Waltons' written warranty claims. [*Id.* at 492.]

If we were not obligated to apply the majority opinion from *Walton* and the holding in *Davis*, I would conclude that the MMWA, as reasonably interpreted by the FTC,[1] precludes the application of binding arbitration agreements to claims arising under the MMWA for the reasons set forth by Chief Judge King in *Walton*, *supra* at 480-492.

I concur.

---

[1] Federal Trade Commission.