**DAIMLERCHRYSLER CORPORATION,**
**Plaintiff,**

v.

**Harry S. MATTHEWS, Jr., Defendant.**

**C.A. No. 20572.**

Court of Chancery of Delaware.
New Castle County.

Submitted: April 7, 2004.
Decided: April 15, 2004.

Tracy A. Burleigh, Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, Delaware, for Plaintiff.

Christopher J. Curtin, Erisman & Curtin, Wilmington, Delaware, for Defendant.

## OPINION

STRINE, Vice Chancellor.

Plaintiff DaimlerChrysler Corporation has moved for summary judgment in this action seeking to compel defendant Harry S. Matthews, Jr. to arbitrate his claims related to a vehicle that Matthews purchased, and to stay litigation that Matthews initiated in Superior Court asserting those claims. The supposedly "binding" arbitration clause that DaimlerChrysler seeks to invoke allows Matthews to first request nonbinding arbitration, a request that Matthews made and DaimlerChrysler refused before Matthews filed suit. That refusal constituted a repudiation of the arbitration agreement that precludes DaimlerChrysler from enforcing that agreement against Matthews. I will therefore enter summary judgment in Matthews' favor.

Moreover, the binding arbitration clause that DaimlerChrysler seeks to invoke is not contained in the written warranty that Matthews received at the time he purchased the vehicle, but in a separate document, in contravention of the disclosure requirements of the Magnuson–Moss Warranty Act and FTC regulations promulgated thereunder, as authoritatively interpreted by a federal court of appeals. DaimlerChrysler therefore cannot compel arbitration of Matthews' written warranty and statutory claims under the Magnuson–Moss Warranty Act, providing an additional ground for entering summary judgment in Matthews' favor with respect to those claims.

### I. Factual Background

Harry S. Matthews, Jr., a Maryland resident, purchased a Dodge truck from Kirkwood Motors, Inc., in Delaware, on November 29, 2001, under a program offered by DaimlerChrysler that allows employees, retirees and eligible family members to obtain a new vehicle at a discount. In connection with the purchase, Matthews signed, among other documents, an "Employee New Vehicle Purchase/Lease Claim Form" (the "Claim Form"), which contained the following provision:

I understand that, in consideration for the discount received, **I will not be able to bring a lawsuit for any disputes relating to this vehicle. Instead, I**

agree to submit any and all disputes through the DaimlerChrysler Vehicle Resolution Process, which includes mandatory arbitration that is binding on both DaimlerChrysler and me. Before initiating this binding arbitration, I will first attempt to resolve the dispute (1) at the dealership, (2) through the customer assistance center, and (3) if I so choose, by nonbinding arbitration. I acknowledge that this Form evidences a transaction involving interstate commerce, and, therefore, the Federal Arbitration Act ("FAA") (9 U.S.C. § 2 et seq.) shall govern the interpretation, enforcement, and proceedings of arbitration.

I represent to DaimlerChrysler Corporation that, before purchasing or leasing a vehicle under the Program, I received and read the Program Rules and Provisions ("Rules"), specifically including a document entitled "Vehicle Resolution Process—Binding Arbitration." I hereby acknowledge that (1) I understand the Rules (2) I agree to be bound by them and will comply with them.... [1]

Matthews contends that, contrary to his representation in the Claim Form, he was never provided with any documents entitled "Program Rules and Provisions" or "Vehicle Resolution Process—Binding Arbitration." Indeed, to this day DaimlerChrysler has been unable to produce any document with either of the precise titles mentioned in the Claim Form, instead producing a document entitled "Rules & Procedures for the Final and Binding Determination of Auto Warranty Disputes," [2] which counsel for DaimlerChrysler contended at oral argument is the "revised" version of the document entitled "Vehicle Resolution Process—Binding Arbitration" that Matthews was supposed to receive when he purchased the vehicle. As important, DaimlerChrysler has not submitted an affidavit by the dealer that indicates that it, as a matter of practice, provided the specified documents to clients or that it ever possessed such documents. The procedure described in the document that DaimlerChrysler did produce is administered by the National Center for Dispute Settlement ("NCDS").

When purchasing the vehicle, Matthews was also provided with a warranty that made no mention of binding arbitration. Rather, the warranty describes, in a section entitled "How to Deal with Warranty Problems," a voluntary "Customer Arbitration Process" [3] that is also administered by NCDS. The warranty states that the Customer Arbitration Process is binding on DaimlerChrysler "but not on you unless you accept the decision," and that "DaimlerChrysler's dispute settlement procedure does not take the place of any state or federal legal remedies available to you. Whether or not you decide to submit your dispute to the Process, you are free to pursue other legal remedies." [4] But, the warranty also states that the Customer Arbitration Process is available only to residents of certain states, not including either Delaware or Maryland.[5]

Matthews has submitted an affidavit stating that after experiencing problems with the vehicle, he took it to the dealer on numerous occasions. When the dealer could not fully address Matthews' concerns, he suggested that Matthews seek to resolve the problem first through the cus-

---

1. Pl.'s App. Ex. D, at A12.

2. Pl.'s App. Ex. E, at A13.

3. Pl.'s App. Ex. H, at A24.

4. *Id.* at A25.

5. *Id.* at A24.

tomer assistance center, and then through arbitration, and provided Matthews with a booklet entitled "Customer Arbitration Process."[6] Matthews followed the dealer's advice.[7] On December 3, 2002, NCDS sent Matthews a letter, with a copy to the DaimlerChrysler Customer Relations Manager, informing Matthews that he was ineligible for participation in the Customer Arbitration Process because he did not meet its residency requirements.[8] The letter did not provide Matthews with any instructions on how he could invoke nonbinding arbitration, instead merely directing him to contact DaimlerChrysler through a toll-free telephone number or to "refer to [his] glove box materials for assistance"[9]—steps that Matthews had already taken.

Understandably frustrated, Matthews filed suit in the Delaware Superior Court on February 13, 2003, against Kirkwood Motors and DaimlerChrysler, alleging violations of the Delaware "Lemon Law,"[10] the implied warranty of merchantability,[11] the express written warranty provided to Matthews, the Magnuson–Moss Warranty Act ("MMWA"),[12] and the Delaware Consumer Fraud Act.[13] On July 15, 2003—a mere three days before the Superior Court was scheduled to hear oral arguments on DaimlerChrysler's motion to dismiss Matthews' complaint on the basis of

the arbitration provision in the Claim Form—DaimlerChrysler offered to submit the dispute to nonbinding, nonjudicial arbitration akin to that offered in the Customer Arbitration Process for which Matthews was earlier told he was ineligible.[14] Matthews rejected that offer.

After oral argument on July 18, 2003, the Superior Court denied DaimlerChrysler's motion to dismiss without prejudice, holding that 10 *Del. C.* § 5701 vests the Court of Chancery with subject matter jurisdiction over actions seeking to enforce agreements to arbitrate. DaimlerChrysler then filed a petition in this court on September 22, 2003, seeking to stay the Superior Court action and compel Matthews to submit his claims to binding arbitration. Kirkwood Motors is not a party to that petition. On December 16, 2003, Matthews, Kirkwood Motors and DaimlerChrysler stipulated to the appointment of an arbitrator under Superior Court Rule 16.1. That arbitration has not been scheduled because of this action.[15]

DaimlerChrysler has moved for summary judgment, arguing that the arbitration provision in the Claim Form requires Matthews to submit all his claims to binding arbitration. Matthews' arguments in response are twofold. First, Matthews contends that DaimlerChrysler has itself

---

6. Matthews Aff. ¶ 12; Def.'s App. Ex. F. at 176.

7. DaimlerChrysler conceded at oral argument that Matthews did in fact contact the customer assistance center, but implied that Matthews did not give DaimlerChrysler a full and fair opportunity to resolve the problem through that center. There is no evidence in the record supporting that contention, and Matthews' statement in his affidavit that he contacted the customer assistance center stands undisputed.

8. Pl.'s App. Ex. G, at A21.

9. *Id.*

10. 6 *Del. C.* § 5001 *et seq.*

11. 6 *Del. C.* § 2–314.

12. 15 U.S.C. § 2301 *et seq.*

13. 6 *Del. C.* § 2513 *et seq.*

14. Def.'s App. Ex. E, at 173.

15. Matthews states in his brief that he offered to make the Rule 16 arbitrator's decision binding, but DaimlerChrysler refused. *See* Def.'s Br. at 5–6.

repudiated the Claim Form, having refused to comply with his request for nonbinding arbitration in the December 3, 2002 letter. I find this argument compelling, and will therefore deny DaimlerChrysler's motion for summary judgment, instead granting summary judgment in Matthews favor.

Matthews' second argument also provides an alternative ground for entering summary judgment in his favor, at least with respect to his written warranty and MMWA claims. Specifically, Matthews argues that the MMWA and Federal Trade Commission regulations promulgated thereunder 1) prohibit enforcement of binding arbitration provisions that are not included within the written warranty; and 2) prohibit binding arbitration altogether, whether or not the arbitration provision is included in the written warranty. Because I agree that DaimlerChrysler's failure to reference the binding arbitration provision in the warranty renders that provision unenforceable as to Matthews' claims arising under the written warranty or the MMWA, I do not reach Matthews' broader argument that such provisions are *per se* unenforceable regardless of whether they are included in the written warranty.

## II. *Legal Analysis*

Under Court of Chancery Rule 56, "[s]ummary judgment will be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of any genuine issue of material fact. All doubt must be resolved in favor of the nonmoving party. The court may grant summary judgment to the nonmoving par-

ty if the evidence supports that conclusion."[16] That is, even though Matthews did not move for summary judgment, I may grant judgment for him if the undisputed facts show that is the appropriate result.

### A. *DaimlerChrysler Repudiated The Claim Form And Therefore Cannot Compel Binding Arbitration*

■ DaimlerChrysler seeks to compel Matthews to arbitrate his claims pursuant to the arbitration clause in the Claim Form. That clause explicitly delineates the procedure that the parties must follow before proceeding to binding arbitration, providing:

> Before initiating this binding arbitration, I will first attempt to resolve the dispute (1) at the dealership, (2) through the customer assistance center, and (3) *if I so choose, by nonbinding arbitration.*[17]

It is undisputed that Matthews attempted to resolve his dispute first at the dealership and then through the customer assistance center, as the Claim Form provides. Matthews argues that the rejection of his request for nonbinding arbitration pursuant to the Customer Arbitration Process, without any further guidance on how Matthews could invoke his rights under the Claim Form, therefore constituted a repudiation of the Claim Form that precludes DaimlerChrysler from compelling binding arbitration. I agree.

■ Under both the Federal Arbitration Act and 10 *Del. C.* § 5701, arbitration agreements are valid, enforceable and irrevocable, *"save upon such grounds as exist at law or in equity for the revocation of any contract."*[18] Thus, arbitration agree-

---

16. *Mell v. New Castle County*, 2003 WL 1919331, at *3 (Del.Ch. Apr.11, 2003) (citations omitted).

17. Pl.'s App. Ex. D, at A12 (emphasis added).

18. 9 U.S.C. § 2 (emphasis added); 10 *Del. C.* § 5701 (emphasis added).

ments are subject to the general principle of contract law that "[w]here a contracting party repudiates a contract, the non-breaching party is entitled to treat the contract as terminated, *i.e.,* as being at an end." [19]  Moreover, the Federal Arbitration Act—which the parties to the Claim Form agreed would "govern the interpretation, enforcement, and proceedings of arbitration" [20]—provides that a party seeking to stay proceedings in favor of arbitration under an agreement must itself not be in default of that agreement,[21] a policy that also sensibly applies to practice under this State's version of the Uniform Arbitration Act.[22]

DaimlerChrysler contends that the December 3, 2002 letter rejecting Matthews' request for arbitration was not a·repudiation of the Claim Form because the warranty that Matthews was provided explicitly indicated that he was ineligible for the Customer Arbitration Process.  In other words, DaimlerChrysler argues that Matthews invoked the "wrong" nonbinding arbitration process, even though it was the

very dealer who sold Matthews his vehicle who also provided him with the Customer Arbitration Process booklet and told him to use that process, and even though the December 3, 2002 letter provides absolutely no instructions on what Matthews needed to do to invoke the "correct" nonbinding arbitration process.  The record contains no documents describing the nonbinding process to which the Claim Form explicitly refers, or even how one might invoke that process, and counsel for DaimlerChrysler could not identify any such documents at oral argument.

Thus, the only reasonable conclusion that can be drawn from the record is that, even if any actual documents implementing the nonbinding arbitration process to which Matthews is, contractually entitled under the Claim Form exist, DaimlerChrysler failed to provide such documents to Matthews or otherwise provide·him with guidance on how he could exercise his rights under the Claim Form when it rejected his attempt to utilize the Customer Arbitration Process.[23]  DaimlerChrysler

19. *Mumford v. Long,* 1986 WL 2249, at *3 (Del.Ch. Feb.21, 1986).

20. Pl.'s App. Ex. D, at A12.

21. *See* 9 U.S.C. § 3 (providing that court may stay proceedings in favor of arbitration only if "the applicant for the stay is not in default in proceeding with such arbitration").  Similarly, a federal district court must deny a petition filed under 9 U.S.C. § 4 for an order to compel arbitration under an agreement where the arbitration agreement is invalid and unenforceable under relevant contract principles.  *See* 9 U.S.C. §§ 2, 4.

22. *See* 10 *Del. C.* § 5703(a) (providing that court may issue order compelling arbitration and staying proceedings only where "a valid agreement to arbitrate in this State was made [and] complied with").

23. There is no suggestion in the record that either of the documents, referenced in the Claim Form, entitled "Program Rules and

Provisions" and "Vehicle Resolution Process—Binding Arbitration," would have contained any information regarding the *nonbinding* arbitration process Matthews was contractually promised.  Put simply, it is not clear that DaimlerChrysler ever implemented procedures to allow a consumer like Matthews to follow the steps set forth in the Claim Form. Moreover, although I need not and do not make any specific finding to this ·effect, I note that Matthews apparently never even received either of those documents, despite the statement in the Claim Form to the contrary.  *See* Matthews Aff. ¶ 14.  Given DaimlerChrysler's failure to produce a copy of the relevant documents or an affidavit of the dealer—a failure that is not explained by the unsupported contention that the document that DaimlerChrysler did produce is the "revised" version of one of the documents specifically mentioned in the Claim Form—the most likely scenario is that Matthews signed the Claim Form even though he had not in fact received the referenced documents.  That

was contractually obligated to honor Matthews' request for nonbinding arbitration by the very Claim Form that it now seeks to enforce against Matthews. Its failure to do so constituted a repudiation of the Claim Form that precludes it from compelling arbitration.

■ Moreover, DaimlerChrysler's later offer—which came just three days before oral argument in Matthews' suit in Superior Court—to submit the dispute to nonbinding arbitration was ineffective to retract its repudiation because Matthews' filing of suit plainly "cut off the repudiator's right to retract." [24] Put simply, DaimlerChrysler's offer was too little, too late, and came after Matthews was forced to incur needless expense.

B. *DaimlerChrysler Cannot Compel Arbitration Of Written Warranty And MMWA Claims Pursuant To An Arbitration Clause That Is Not Included Within The Written Warranty*

Matthews alternatively argues that his written warranty and MMWA claims are not subject to arbitration because 1) the warranty contains no binding arbitration provision and 2) binding arbitration provisions are prohibited by the MMWA and relevant FTC regulations. After briefly reviewing the statutory and regulatory scheme, I will explain why I conclude that Matthews' first argument in this regard is persuasive, and will address the second argument only to the extent necessary to support that conclusion.

The MMWA "generally applies to written warranties covering consumer products." [25] Under § 2310(d)(1) of the MMWA, "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief" in any federal or state court.[26] The MMWA also provides that if a warrantor creates an "informal dispute settlement procedure"— a term undefined by the MMWA—that complies with certain minimum requirements established by FTC rules, the warrantor may require the consumer to resort to that procedure before initiating the statutory cause of action created in § 2310(d)(1).[27]

would hardly be a novel thing for a consumer to do. I need not and do not rest my ruling on this ground, however.

24. *Mumford*, 1986 WL 2249, at *3. *See also Derwell Co. v. Apic, Inc.*, 278 A.2d 338, 342 (Del.Ch.1971) (holding that an attempted retraction was ineffective because it occurred after the nonbreaching party had filed suit on the same contract).

25. 16 C.F.R. § 700.3(c).

26. 15 U.S.C. § 2310(d)(1).

27. Specifically, § 2310(a) provides:

(2) The Commission shall prescribe rules setting forth minimum requirements for any informal dispute settlement procedure which is incorporated into the terms of a written warranty to which any provision of this chapter applies. Such rules shall provide for participation in such procedure by independent or governmental entities.

(3) One or more warrantors may establish an informal dispute settlement procedure which meets the requirements of the Commission's rules under paragraph (2). If—

(A) a warrantor establishes such a procedure,

(B) such procedure, and its implementation, meets the requirements of such rules, and

(C) he incorporates in a written warranty a requirement that the consumer resort to such procedure before pursuing any legal remedy under this section respecting such warranty,

then (i) the consumer may not commence a civil action (other than a class action) under subsection (d) of this section unless he initially resorts to such procedure. . . .

Implementing these provisions, the FTC has promulgated regulations providing that a "warrantor shall not incorporate into the terms of a written warranty a Mechanism that fails to comply with" [28] various requirements in 16 C.F.R. § 703 ("Rule 703"). "Mechanism" is defined as "an informal dispute settlement procedure which is incorporated into the terms of a written warranty to which any provision of Title I of the Act applies, as provided in section 110 of the Act." [29] One of the requirements of Rule 703 is that "[d]ecisions of the Mechanism shall not be legally binding on any person." [30] That is, Rule 703, by its terms, establishes as a minimum requirement of any informal dispute settlement procedure that such a procedure cannot provide for binding arbitration.

The MMWA also imposes various disclosure obligations on warrantors. Section 2302(a) mandates that warrantors disclose certain information in accordance with rules promulgated by the FTC. Specifically, § 2302(a) of the MMWA provides:

(a) In order to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products, *any warrantor warranting a consumer product to a consumer by means of a written warranty shall, to the extent required by rules of the Commission, fully and conspicuously disclose in simple and readily understood language the terms and conditions of such warranty. Such rules may require inclusion in the written warranty of any of the following items among others:*

. . . .

(4) A statement of what the warrantor will do in the event of a defect, malfunction, or failure to conform with such written warranty—at whose expense—and for what period of time.

(5) A statement of what the consumer must do and expenses he must bear.

(6) Exceptions and exclusions from the terms of the warranty.

(7) The step-by-step procedure which the consumer should take in order to obtain performance of any obligation under the warranty, including the identification of any person or class of persons authorized to perform the obligations set forth in the warranty.

*(8) Information respecting the availability of any informal dispute settlement procedure offered by the warrantor and a recital, where the warranty so provides, that the purchaser may be required to resort to such procedure before pursuing any legal remedies in the courts.*

*(9) A brief, general description of the legal remedies available to the consumer.*

. . . .

(13) The elements of the warranty in words or phrases which would not mislead a reasonable, average consumer as to the nature or scope of the warranty.[31]

Implementing § 2302(a),[32] the FTC enacted the "one-document rule" in 16 C.F.R. § 701.3, which provides:

---

**28.** 16 C.F.R. § 703.2(a).

**29.** *Id.* § 703.1(e).

**30.** *Id.* § 703.5(j).

**31.** 15 U.S.C. § 2302(a) (emphasis added).

**32.** Specific FTC authority for enacting rules implementing § 2302(a) is found in § 2302(b)(1)(a), which provides that "[t]he Commission shall prescribe rules requiring that the terms of any written warranty on a consumer product be made available to the consumer (or prospective consumer) prior to the sale of the product to him."

(a) Any warrantor warranting to a consumer by means of a written warranty a consumer product actually costing the consumer more than $15.00 *shall clearly and conspicuously disclose in a single document in simple and readily understood language,* the following items of information:

. . . .

(3) A statement of what the warrantor will do in the event of a defect, malfunction or failure to conform with the written warranty, including the items or services the warrantor will pay for or provide, and, where necessary for clarification, those which the warrantor will not pay for or provide;

. . . .

(5) A step-by-step explanation of the procedure which the consumer should follow in order to obtain performance of any warranty obligation, including the persons or class of persons authorized to perform warranty obligations. This includes the name(s) of the warrantor(s), together with: the mailing address(es) of the warrantor(s), and/or the name or title and the address of any employee or department of the warrantor responsible for the performance of warranty obligations, and/or a telephone number which consumers may use without charge to obtain information on warranty performance;

*(6) Information respecting the availability of any informal dispute settlement mechanism elected by the warrantor in compliance with Part 703 of this subchapter [.]* [33]

Consistent with subsection (a)(6) of the one-document rule, the FTC also requires that a warrantor "disclose clearly and conspicuously . . . on the face of the written warranty . . . [a] statement of the availability of the informal dispute settlement mechanism." [34] And, consistent with the prohibition of binding arbitration in Rule 703, the FTC also prohibits warrantors from stating in written warranties that disputes concerning warranties are subject to binding arbitration. [35]

Federal and state courts applying the statutory and regulatory scheme outlined above have addressed two significant issues involving efforts by warrantors to compel arbitration of consumer claims. First, courts have addressed the question of whether the MMWA itself prohibits final and binding arbitration, and whether the FTC's implementation of that prohibition in Rule 703 deserves judicial deference under *Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.* [36] Although federal district courts and state courts are split on the issue, the only two federal appellate courts to directly address it—the Court of Appeals for the Fifth Circuit in *Walton v. Rose Mobile Homes L.L.C.,* [37] and the Court of Appeals for the Eleventh

33. 16 C.F.R. § 701.3(a) (emphasis added).

34. *Id.* § 703.2(b)(1).

35. *See id.* § 700.8 ("A warrantor shall not indicate in any written warranty or service contract either directly or indirectly that the decision of the warrantor, service contractor, *or any designated third party* is final or binding in any dispute concerning the warranty or service contract. Nor shall a warrantor or service contractor state that it alone shall

determine what is a defect under the agreement. Such statements are deceptive since section 110(d) of the Act gives state and federal courts jurisdiction over suits for breach of warranty and service contract." (emphasis added)).

36. 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

37. 298 F.3d 470 (5th Cir.2002).

Circuit in *Davis v. Southern Energy Homes, Inc.*[38]—have concluded that Congress, in enacting the MMWA, did not intend to reverse the prevailing rule under the Federal Arbitration Act that contractual provisions for binding arbitration are enforceable, and that FTC rules declaring the contrary are invalid.[39]

■ DaimlerChrysler and Matthews join issue on whether *Walton* and *Davis* were correctly decided, arguing over the soundness of the complex statutory interpretation and *Chevron* analyses performed in those cases. But, I need not enter the fray, because the second question presented by DaimlerChrysler's motion—whether it can compel arbitration of claims arising under written warranties and the MMWA where the warranty does not include a reference to an arbitration provision—is a less controversial one that has been consistently answered in the negative.

In *Cunningham v. Fleetwood Homes of Georgia, Inc.*,[40] the Court of Appeals for the Eleventh Circuit affirmed a district court order declining to compel arbitration of a purchaser's written warranty claims, holding that the binding arbitration provision was a material term of the warranty that was required to be disclosed in the warranty itself. In coming to that conclusion, the Court also stated that the warrantor's "failure to disclose in the warranty a term or clause requiring the [purchasers] to utilize an informal dispute resolution mechanism runs afoul of the disclosure requirements of the Magnuson–Moss Warranty Act." [41] Other federal and state courts have recently followed *Cunningham*.[42]

Without expressly saying so, DaimlerChrysler asks that I reject *Cunningham* and its progeny, seizing on the language quoted above and contending that binding arbitration is not an "informal dispute settlement mechanism" that must be disclosed in a single document under 16 C.F.R. § 701.3(a)(6), and that the binding arbitration provision in the Claim Form does not otherwise fall within the categories of information that are required to be disclosed in the warranty under 15 U.S.C. § 2302(a) and/or Rule 701.3.

In addressing this argument, it must be remembered that the reason that FTC Rules as they are currently written do not explicitly require warrantors to include binding arbitration provisions in the warranty (and, indeed, prohibit them from do-

---

**38.** 305 F.3d 1268 (11th Cir.2002).

**39.** For a sampling of federal district and state court decisions that have addressed this issue, see *Walton*, 298 F.3d at 478 n. 16.

**40.** 253 F.3d 611 (11th Cir.2001).

**41.** *Id.* at 624.

**42.** *E.g., Adkins v. Palm Harbor Homes, Inc.,* 157 F.Supp.2d 1256, 1259–60 (M.D.Ala.2001) ("In the instant case, therefore, the failure to include all of the relevant terms of the warranty, including that the warranty must be enforced through binding arbitration if an arbitration agreement is entered into at the time of purchase, is violative of the purpose, text, and legislative history of the Magnuson–Moss Act, as interpreted by the Eleventh Cir-

cuit. Accordingly . . . Adkins cannot be compelled to arbitrate his written express warranty claims which are brought as a statutory cause of action under the Magnuson–Moss Warranty Act."), *aff'd*, 2002 WL 1155424 (11th Cir. Apr.29, 2002) (TABLE); *Ex parte Thicklin*, 824 So.2d 723, 730 (Ala.2002) ("We find the reasoning of the Eleventh Circuit persuasive, and we conclude that Riverchase's failure to disclose in the warranty the requirement that Thicklin arbitrate her claims against it violates the disclosure requirements of the Magnuson–Moss Act. Therefore, the trial court abused its discretion in compelling Thicklin to arbitrate her express-warranty claim and her claims alleging Magnuson–Moss Act violations.").

ing so [43]) is that the FTC was of the view that such binding provisions were altogether prohibited by the statutory scheme when those rules were written. The FTC simply did not anticipate that the federal courts would invalidate its interpretation of the MMWA,[44] and therefore it is hardly surprising that the one-document rule as currently written requires disclosure only of "informal dispute settlement mechanism[s]." [45]

Nonetheless, there admittedly is some tension between *Cunningham*, on the one hand, and *Walton* and *Davis*, on the other. Both *Davis* and *Walton*, which held that binding arbitration provisions are not precluded by the MMWA and invalidated the FTC's contrary regulation under *Chevron*, stated that "there is . . . no evidence that Congress intended binding arbitration to be considered an informal dispute settlement procedure. Therefore the fact that any informal dispute settlement procedure must be nonbinding, does not imply that Congress meant to preclude binding arbitration, which is of a different nature." [46] Indeed, *Cunningham* itself contains some language suggesting that binding arbitration is distinct from the informal dispute

settlement procedure referred to in § 2310 of the MMWA,[47] notwithstanding the fact that—as the portion of *Cunningham* quoted above indicates—the Court of Appeals for the Eleventh Circuit's holding in that case appears to rest, at least in part, on its conclusion that a provision requiring a consumer to submit warranty claims to binding arbitration must be disclosed in the warranty because it is an "informal dispute settlement mechanism" covered by 16 C.F.R. § 701.3(a)(6).[48]

But the central holding of *Cunningham*—that binding arbitration provisions cannot be enforced where they are not referred to in the warranty—did not rest solely on a strict reading of the text of the FTC's one-document rule. Whether or not the specific terms of Rule 701.3(a)(6) require disclosure of binding arbitration provisions in the warranty, the Court of Appeals for the Eleventh Circuit in *Cunningham* read § 2302(a) and the FTC's one-document rule, as well as the legislative history and purposes of the MMWA, to establish the broader principle that a warrantor is required to "disclose in a single document all relevant terms of the

43. *See* 16 C.F.R. § 700.8 ("A warrantor shall not indicate in any written warranty or service contract either directly or indirectly that the decision of the warrantor, service contractor, or any designated third party is final or binding in any dispute concerning the warranty or service contract.").

44. As recently as 1999, the FTC reviewed Rule 703 and decided not to amend that Rule to allow for binding arbitration. *See* 64 Fed. Reg. 19,700, 19,708–09 (Apr. 22, 1999).

45. *See* 16 C.F.R. § 701.3(a)(6).

46. *Walton*, 298 F.3d at 476, *quoted in Davis*, 305 F.3d at 1276.

47. *E.g.*, *Cunningham*, 253 F.3d at 619 ("[S]tanding alone, the presence of the non-

binding § 2310 mechanism in the statutory text [does not] require[] the conclusion that Magnuson–Moss claims may not be the subject of binding arbitration agreements."); *id.* at 620 ("[W]e are inclined to think that the presence of the nonbinding § 2310 mechanism in the statutory text does not in and of itself mandate the conclusion that Magnuson–Moss renders binding arbitration agreements unenforceable. . . .").

48. *See also id.* at 622 ("Fleetwood's use of its third-party beneficiary status under the Ronnie Smith's–Cunningham agreement to compel arbitration where Fleetwood has failed to disclose in the warranty a term or clause requiring the Cunninghams to utilize an informal dispute resolution mechanism contravenes the text, legislative history, and purpose of the Magnuson–Moss Warranty Act.").

warranty."[49] Whether that reading is a sensible one as a general proposition is not before me; rather, the only question I need decide is whether to continue to apply that principle to provisions requiring binding arbitration of written warranty claims, as the cases following *Cunningham* have consistently done.[50]

Neither *Davis* nor *Walton*—both of which involved situations where the warranty at issue did in fact contain an arbitration clause—undermine *Cunningham's* analysis of that particular question.[51] Indeed, the Court of Appeals for the Eleventh Circuit was careful to note in *Davis* that its earlier decision in *Cunningham* had not reached the broader question of whether provisions requiring binding arbitration of consumer claims are permissible under the MMWA precisely because *Cun-*

*ningham* was resolvable on narrower grounds,[52] indicating that the court had no intention of calling *Cunningham* into question. DaimlerChrysler has not provided any compelling reason why I should disregard *Cunningham* and its progeny, and I decline to do so. I therefore hold that the arbitration clause in the Claim Form is unenforceable as to Matthews' written warranty and MMWA claims because it is not included in the warranty.[53]

Guiding my conclusion in this regard is the fact that I have no doubt that when the FTC or Congress revisit the regulatory scheme in this area, they will adhere to *Cunningham* and decline to adopt the position advanced by DaimlerChrysler, which, in effect, is that while warrantors are required to include any *nonbinding* arbitration provisions in the warranty it-

---

**49.** *Id.*

**50.** One recent decision of the Michigan Court of Appeals, following *Davis* and *Walton*, held that a binding arbitration provision was enforceable even though it was not included in the warranty. *Abela v. Gen. Motors Corp.*, 257 Mich.App. 513, 669 N.W.2d 271 (2003), *aff'd*, 2004 WL 739954 (Mich. Apr.7, 2004). But, in that case the court explicitly declined to consider the plaintiff's argument that enforcement of the clause violated the one-document rule because the plaintiff had not raised that issue in the trial court. *Id.* at 273 n. 3.

Also, in *Richardson v. Palm Harbor Homes, Inc.*, 254 F.3d 1321 (11th Cir.2001), the Court of Appeals for the Eleventh Circuit held that a consumer could be compelled to arbitrate warranty claims under a predispute arbitration agreement, without discussing whether that agreement was included within the written warranty. But, the court's decision was based on its conclusion that even if the MMWA prohibits binding arbitration of some warranty claims, that prohibition would extend only to *written* express warranty claims and not to the consumer's state law *oral* express warranty claim, which was the only express warranty claim that had been asserted and was "simply outside any superseding scope of the MMWA." *Id.* at 1327. The court plainly did not intend to disturb *Cunningham*,

and indeed cited it approvingly throughout its opinion.

**51.** In *Walton*, the plaintiffs had also signed a separate sales contract that contained an arbitration clause, as well as a "Binding Arbitration Agreement." *Walton*, 298 F.3d at 472 n. 1. Nothing in the court's opinion suggests that it was one of those arbitration clauses, rather than the one in the warranty itself, that was held to be enforceable.

**52.** *Davis*, 305 F.3d at 1272 n. 1.

**53.** Violation of the one-document rule alone would not prevent DaimlerChrysler from compelling arbitration of Matthews' other claims—i.e., his Lemon Law, implied warranty, and Consumer Fraud Act claims—as precedent suggests that a purchaser may be compelled to arbitrate claims other than written warranty and MMWA claims even if the arbitration clause is not in the warranty. *E.g.*, *Ex parte Thicklin*, 824 So.2d 723, 728 (Ala. 2002) (stating that plaintiff's one-document rule argument was "compelling as to Thicklin's express-warranty and Magnuson–Moss Act violation claims"). But, as noted above, DaimlerChrysler cannot compel arbitration of those claims either because it repudiated the Claim Form.

self, they should be free to include *binding* arbitration provisions in a separate document. Even if Congress adopts (or the FTC acquiesces in) the view expressed in *Walton* and *Davis* that binding arbitration provisions are permissible, it simply cannot be that either body would permit warrantors to hide such provisions—which by definition deprive a consumer of his right to judicial review of his claims—in a stack of paperwork handed to him at the time of sale, while also requiring warrantors to disclose in the warranty itself any nonbinding informal dispute settlement procedure that at most would defer the consumer's right to judicial review until the consumer first resorted to such procedure. It should not be presumed that the federal authorities would enact an incoherent policy of consumer protection. Indeed, a fair reading of 15 U.S.C. §§ 2302(a)(8) and (9) refutes any argument that Congress harbored such a bizarre intent.

## III. *Conclusion*

For the foregoing reasons, I deny DaimlerChrysler's motion for summary judgment and enter summary judgment in favor of Matthews. The parties are hereby ordered to submit all Matthews' claims to the Rule 16.1 arbitrator that has been appointed by the Superior Court.